IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 04-0751
════════════
 
Texas Municipal Power 
Agency, City of Denton, 
City of Garland, and GEUS F/K/A Greenville Electric Utility System, 
Petitioners,
 
v.
 
Public Utility Commission of 
Texas and City of Bryan, Texas, Respondents
 
- consolidated with -
 
════════════
No. 04-0752
════════════
 
Texas Municipal Power 
Agency, City of Denton, Texas, City of 
Garland, Texas
and City of Greenville, Texas, Petitioners,
 
v.
 
Public Utility Commission of 
Texas and City of Bryan, Texas, Respondents
 
 
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Third District of 
Texas
════════════════════════════════════════════════════
 
 
Argued October 18, 
2005
 
            
Justice Brister, 
joined by Justice Willett, 
dissenting.
            
The Public Utility Commission “has jurisdiction over municipally owned 
utilities . . . to regulate wholesale transmission rates.”[1] Yet the Court holds it cannot regulate 
those rates when the parties have a private contract, even if that contract 
itself recognizes that it is subject to governmental rates and regulations.[2] Requiring the Commission to act but 
denying it the power to act is, as James Madison wrote more than two centuries 
ago, contrary to both law and reason:
 
No axiom 
is more clearly established in law, or in reason, than that wherever the end is 
required, the means are authorized; wherever a general power to do a thing is 
given, every particular power necessary for doing it is included.[3]
 
 
Because the 
Legislature has ordered the Commission to set these rates but the Court holds it 
cannot, I respectfully dissent.
            
We answered the precise question here in our 2001 opinion Public 
Utility Commission of Texas v. City Public Service Board of San Antonio.[4] There, we held the Commission could not 
set transmission rates by rule, but “[o]nce confronted 
with a dispute between utilities, the Commission can arrive at a reasonable rate 
to resolve that dispute.”[5] This was just such a case, confronting 
the Commission with a dispute between utilities about whether one was being 
overcharged for transmission.
            
The Court decides the Commission did not have jurisdiction here (despite 
what we said in 2001) because Chapter 35 of the Texas Utilities Code applies 
only when the Commission orders new transmission service after a provider has 
refused it. Nothing in Chapter 35 says so. To the contrary, section 35.004 
requires the Commission to ensure that transmission rates are reasonable and 
nondiscriminatory, whether the Commission has ordered service or not.[6] Yet the Court holds the Commission can do 
no such thing.
            
Here, the Commission ordered only two things, both of which fall well 
within the powers the Legislature has granted to it. First, the Commission 
authorized Bryan 
“to nominate its own load” — that is, to report to the Commission its 
anticipated demand for transmission of electricity. Chapter 35 specifically 
authorizes the Commission to “adopt rules relating to wholesale transmission 
service, rates, and access,”[7] one example of which (as we said in 2001) 
is the power to order utilities “to make filings with the Commission.”[8] As such reports are part and parcel of 
the Commission’s administrative process and absolutely necessary for it to 
fulfill several statutory duties,[9] it is up to the Commission to decide who 
should make them. “When an administrative agency is created to centralize 
expertise in a certain regulatory area, it is to be given a large degree of 
latitude in the methods it uses to accomplish its regulatory function.”[10] Moreover, this order can have no effect 
on the parties’ contract; TMPA acknowledges in its brief that allowing Bryan to nominate its own 
load (as it did in 1997) neither amended nor modified their contract. Plainly, 
this administrative designation is one in which the courts have little interest 
and less expertise.
            
Second, the Commission’s order changed TMPA’s 
transmission charges alone — not its charges for generation, administration, or 
all charges when added together. The Court incorrectly says the Commission 
ordered more, requiring TMPA to reduce (1) transmission charges, and (2) 
the parties’ contractual uniform sales rate.[11] The first is fact, the second is 
fiction. The Commission’s last legal conclusion was that “Bryan is obligated to pay 
only those transmission charges established by the Commission.” There was no 
legal conclusion setting aside the parties’ total sales price, which is why the 
Court does not quote one. 
            
Chapter 35 authorizes the Commission to oversee transmission service by 
or for municipal utilities like TMPA and Bryan, and to determine whether the 
terms of that service are reasonable.[12] One of the most important of those 
terms, of course, is price. Here, the Commission found that Bryan’s transmission rates 
were unreasonable because they were the same rates as its sister cities, who 
were much farther from the generating plant. The statute clearly makes 
transmission rates the Commission’s business, not ours.
            
TMPA says this order effectively requires it to unbundle its services. But at most, the Commission’s orders 
require it to unbundle its bills, not its business. 
TMPA knows perfectly well what the transmission charges are for each city, as 
electricity for Bryan is transmitted over its own lines, and 
electricity for the remaining cities is transmitted over TXU lines at 
Commission-established rates. As TMPA reports in its own brief, since 1997 
“transmitting utilities have made filings showing these costs without having to 
unbundle any existing sales contract.” While the 
Commission’s order in the Complaint Proceeding limited TMPA’s transmission charges, it did not require TMPA to 
separate generation and transmission services or even bill them separately. The 
order in the Rate Proceeding three months later arguably went further by stating 
that “Bryan is 
entitled to nominate its own load and take unbundled transmission service.” But 
the parties’ contract was never admitted in that proceeding or mentioned in the 
order, and the decision was based on the result in the earlier Complaint 
Proceeding which did not require separate services. The only issue in the 
Rate Proceeding was who should nominate the load, and the Commission promises 
that it intended to adjudicate nothing more when it ordered transmission service 
“unbundled.” Based on this judicial admission,[13] this Court has no basis to presume 
otherwise. Thus, TMPA need not unbundle its services 
structurally or functionally to comply with the Commission’s order — it can 
simply charge each city the rates that already appear in its own books.
            
Seizing on this ambiguity about unbundling, TMPA argues the Commission 
has abrogated the parties’ contract. But while the Commission ordered that 
transmission rates had to be lower for Bryan than its sister cities, it never said 
anything about the total rate TMPA could charge. To the contrary, the 
Commission expressly denied exercising any authority over TMPA’s power generation rates or the parties’ contract. 
Thus, for example, if the Commission’s transmission rate for Bryan was 5¢/kwh 
and for the other cities 10¢/kwh, nothing in the order here said TMPA could no 
longer charge each city a bundled price of 50¢/kwh — offsetting Bryan’s lower 
transmission rates with higher generation rates. Whether doing so would violate 
the parties’ power contracts is a question pending in the Grimes County litigation, and thus is not before 
us. All the Commission said here (and the sole ground for the trial court’s 
summary judgment against TMPA) was that the Commission had jurisdiction to 
determine TMPA’s transmission rates.
            
Accordingly, we need not decide today whether chapter 40 (effective 
September 1, 1999) applies retroactively. Even if it does, it still allows the 
Commission to regulate TMPA’s transmission rates,[14] which is all the Commission purports to 
do. While it expressly prohibits the Commission from ordering municipally owned 
utilities to unbundle services, for the reasons noted 
above that is not what the Commission’s orders require.[15] 
            
This dispute concerns electricity rates charged ten years ago. Those 
rates have yet to be recalculated based on our 2001 decision in San Antonio. After 
eight years, the parties’ contract litigation in Grimes County has yet to begin in earnest, 
pending the outcome of this administrative appeal. And as the contract at issue 
here expires in 2011, the parties’ litigation will probably last longer than 
their relationship. Meanwhile, the rest of the world has moved on, the 
Legislature having abrogated the result we reached in San Antonio 
two years before we wrote it.[16] 
            
All this serves as a reminder why courts should think long and hard 
before getting involved in administrative rate-setting proceedings. In my view, 
it is past time to let the Commission get about its 
business. I would affirm the judgments of the courts below and remand these 
proceedings to the Commission.

 
 
Scott 
Brister
Justice
 
OPINION 
DELIVERED: December 14, 2007








[1] 
Tex. Util. Code § 40.004(1).

[2] 
The parties’ contract provided:
 
Section 28: Governmental Rates, Regulations and Laws. 
The Contract shall be subject to all 
valid rules, regulations and laws applicable thereto, as promulgated by the 
United States of America, the 
State of Texas, or any other governmental body or 
agency having lawful jurisdiction or any authorized representative or agency of 
any of them.

[3] 
The Federalist No. 44, at 74 
(James Madison) (J. and A. M'Lean ed. 1788).

[4] 
53 S.W.3d 310 (Tex. 2001).

[5] 
Id. at 
320.

[6] 
See Tex. Util. 
Code § 35.004(b) (“The commission shall 
ensure that an electric utility or transmission and distribution utility 
provides nondiscriminatory access to wholesale transmission service . . . .”); 
id. § 35.004(c) (“When an electric utility . 
. . provides wholesale transmission service within ERCOT at the request of a 
third party, the commission shall ensure that the utility recovers the utility’s 
reasonable costs . . . so that the utility’s other customers do not bear the 
costs of the service.”). 

[7] 
Id. 
§ 35.006(a).

[8] 
San 
Antonio, 53 S.W.3d at 319 (citing 16 Tex. Admin. Code § 
23.67(o)).

[9] 
See, e.g., Tex. Util. Code 
§ 35.004(d) (“The commission shall price wholesale transmission services 
within ERCOT based on the postage stamp method of pricing under which a 
transmission-owning utility’s rate is based on the ERCOT utilities’ combined 
annual costs of transmission divided by the total demand placed on the combined 
transmission systems of all such transmission-owning utilities within a power 
region.”); id. § 35.007(a) (“Except as provided by Subsection (b), an 
electric utility that owns or operates a transmission facility shall file a 
tariff in compliance with commission rules adopted under Section 35.006.”); 
id. § 40.004(7) (granting Commission jurisdiction “to require reports of 
municipally owned utility operations only to the extent necessary to: (A) enable 
the commission to determine the aggregate load and energy requirements of the 
state and the resources available to serve that load”).

[10] State v. Pub. Util. 
Comm'n of Tex., 883 S.W.2d 190, 197 (Tex. 
1994).

[11] __ S.W.3d at ___.

[12] Tex. Util. Code § 35.005(a) (“The 
commission may require an electric utility to provide transmission service at 
wholesale to another electric utility . . . and may determine whether terms for 
the transmission service are reasonable.”); id. § 35.001 (“In this 
subchapter, ‘electric utility’ includes a municipally owned utility . . . 
.”).

[13] See Holy Cross 
Church of God in Christ v. Wolf, 44 
S.W.3d 562, 568 (Tex. 2001) (“A judicial admission that is 
clear and unequivocal has conclusive effect and bars the admitting party from 
later disputing the admitted fact.”).

[14] Tex. Util. Code § 40.004(1) (“Except as 
specifically otherwise provided in this chapter, the commission has jurisdiction 
over municipally owned utilities only for the following purposes: (1) to 
regulate wholesale transmission rates and service, including terms of access, to 
the extent provided by Subchapter A, Chapter 35 . . . .”).

[15] Id. § 40.054(e); see also id. 
§ 40.055(a)(2) (vesting exclusive jurisdiction 
regarding unbundling to body vested with the power to manage and operate a 
municipally owned utility).

[16] See Pub. Util. Comm'n of Tex. v. City Pub. Serv. Bd. of San Antonio, 53 S.W.3d 310, 327 (Tex. 2001) 
(Hecht, J., dissenting) (“What can be said with absolute certainty, however, is 
that the Legislature determined in 1999 that the Commission's postage stamp rate 
was consistent with the overall scheme of chapter 35 and the best way to achieve 
its purposes. In light of that determination, I do not understand how it is 
possible to conclude, as the Court does, that the exact same statute in 1995, 
minus the provision added in 1999, prohibited the Commission’s postage stamp 
rate methodology.”).