**Reversed and Remanded and Opinion filed May 23, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00098-CV

## GORDON M. SWOBODA, Appellant

## V.

## OCWEN LOAN SERVICING, LLC; AND U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE, Appellees

**On Appeal from the 11th District Court
Harris County, Texas
Trial Court Cause No. 2013-57888**

## OPINION

The main question in this appeal is whether a home-foreclosure action is barred by the statute of limitations. The borrower moved for summary judgment in the court below, arguing that the foreclosure action was untimely because it was filed more than four years after the lender accelerated the maturity date of the note. The lender filed a cross-motion for summary judgment, arguing that its action was timely because the prior acceleration had been abandoned. The trial court denied the

borrower's motion and granted the lender's cross-motion. Because we conclude that neither movant established that it was entitled to judgment as a matter of law, we reverse the trial court's judgment and remand the case for additional proceedings consistent with this opinion.

## BACKGROUND

The borrower in this case is Gordon Swoboda, who in 2006 executed a thirty-year home equity note in the principal amount of $228,000. That note is secured by a deed of trust, which was made for the benefit of the lender and all of its successors and assigns. The current assignee of the deed of trust is U.S. Bank National Association, and the current servicer of the loan is Ocwen Loan Servicing, LLC. For ease of reference, we identify these entities and all of their predecessors as the "Bank."

Swoboda missed his monthly installment payment in April of 2008, and all payments thereafter. His default triggered a protracted history of litigation, which we condense into the following timeline:

- July 22, 2008—The Bank sends its first notice of acceleration, after having previously notified Swoboda of its intent to accelerate.

- August 22, 2008—The Bank files its first foreclosure petition in state court under Rule 736 of the Texas Rules of Civil Procedure. This petition is subsequently dismissed for want of prosecution.

- July 9, 2009—The Bank sends its second notice of acceleration.

- July 27, 2009—The Bank files its second foreclosure petition under Rule 736. This petition is also dismissed subsequently for want of prosecution.

- June 6, 2011—The Bank files its third foreclosure petition under Rule 736. The Bank subsequently nonsuits this petition.

- January 28, 2013—The Bank sends its third notice of acceleration.

- May 6, 2013—The Bank files its fourth foreclosure petition under Rule 736. Swoboda responds by filing an original petition in a separate cause number, seeking a stay and dismissal of the foreclosure action, as well as other forms of relief. The Bank removes that action to federal court because of diversity jurisdiction. The case stays there for nearly three years, until the federal court remands it back to state court after concluding that the Bank had not established complete diversity between the parties.

Once back in state court, the parties filed the two motions for summary judgment that are the subject of this appeal. Swoboda argued, among other points in his motion, that the Bank's latest foreclosure action, which began in 2013, was barred by the four-year statute of limitations because the action accrued nearly five years earlier with the 2008 notice of acceleration. The Bank argued in its cross-motion that its action was not time-barred because the Bank abandoned the acceleration through a series of events, which are discussed in greater detail below. The trial court denied Swoboda's motion, granted the Bank's cross-motion, and rendered a final judgment declaring that the lien on Swoboda's property is foreclosed.

Swoboda now appeals from that final judgment.

**STANDARD OF REVIEW**

When, as here, both parties move for summary judgment and the trial court grants one motion and denies the other, we consider all questions presented, examine

all of the evidence, and render the judgment the trial court should have rendered. *See Commr's Court of Titus Cnty. v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997).

We review motions for summary judgment de novo. *See Boerjan v. Rodriguez*, 436 S.W.3d 307, 310 (Tex. 2014) (per curiam). To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). If the movant produces evidence that conclusively establishes its right to summary judgment, then the burden of proof shifts to the nonmovant to present evidence sufficient to raise a fact issue. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). When deciding whether a fact issue has been raised, we consider all of the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

## STATUTE OF LIMITATIONS AND ABANDONMENT OF ACCELERATION

A lender must bring suit to foreclose on a real property lien "not later than four years after the day the cause of action accrues." *See* Tex. Civ. Prac. & Rem. Code § 16.035(a). As a general rule, the accrual date is the maturity date of the note, rather than the earlier date of the borrower's default. *Id.* § 16.035(e). But there is an exception to that rule: If the real property lien contains an optional acceleration clause, as the deed of trust does here, then the cause of action accrues when the lender exercises its option to accelerate the maturity date of the note. *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001).

4

Once a lender has accelerated the maturity date of the note, the lender can restore the original maturity date—and therefore reset the running of limitations— by abandoning the acceleration as though it had never happened. *Id.* at 566–67. Abandonment is based on the concept of waiver, which requires the showing of three elements: (1) the party has an existing right; (2) the party has actual knowledge of the right; and (3) the party actually intends to relinquish the right, or engages in intentional conduct inconsistent with the right. *See Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). Intent is the critical element, and its manifestation must be unequivocal. *See Thompson v. Bank of Am. Nat'l Ass'n*, 783 F.3d 1022, 1025 (5th Cir. 2015).

The best means of achieving an abandonment is through written notice of rescission. *See* Tex. Civ. Prac. & Rem. Code § 16.038(a) (providing for this method); *Sexton v. Deutsche Bank Nat'l Trust Co.*, 731 Fed. App'x 302, 308 (5th Cir. 2018) (per curiam) (describing this method as "a best practice"). But that method is not exclusive. *See* Tex. Civ. Prac. & Rem. Code § 16.038(e). Abandonment can also be accomplished through an agreement between the parties or through other joint actions. *See Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 353 (Tex. App.— Houston [1st Dist.] 2012, no pet.). For example, abandonment is considered complete when the borrower resumes making installment payments after an event of default and the lender accepts those payments without exacting any remedies available to it despite a previously declared acceleration. *See Holy Cross Church*, 44 S.W.3d at 566–67.

Whether a lender has abandoned an acceleration is generally a question of fact. *See Residential Credit Sols., Inc. v. Burg*, No. 01-15-00067-CV, 2016 WL 3162205, at *3 (Tex. App.—Houston [1st Dist.] June 2, 2016, no pet.) (mem. op.). But when the facts are admitted or clearly established, abandonment may sometimes

be determined as a matter of law. *See Bracken v. Wells Fargo Bank, N.A.*, No. 05-16-01334-CV, 2018 WL 1026268, at *5 (Tex. App.—Dallas Feb. 23, 2018, pet. denied) (mem. op.); *e.g., Holy Cross Church*, 44 S.W.3d at 566–67.

## THE BANK'S MOTION

If the Bank abandoned its 2008 acceleration, then the next earliest date on which its cause of action could have accrued was July 9, 2009, when the Bank sent its second notice of acceleration. That second notice predates the Bank's latest foreclosure action by less than four years, which means that the action would not be barred by limitations, assuming that the earlier abandonment actually occurred.

The Bank argued in its cross-motion for summary judgment that the evidence conclusively established an abandonment of the 2008 acceleration. In support of that argument, the Bank relied on four categories of evidence. We examine each category in turn.

### A. The Loan Modification Agreement

In October of 2008, the Bank notified Swoboda that he had been pre-approved for a loan modification program. The notice informed Swoboda that if he signed an attached loan modification agreement ("LMA") and returned a down payment, then his account would become current immediately, all outstanding late charges would be waived, and his monthly payments and interest rate would be reduced going forward. The notice included the following warning: "The loan modification will not be complete until we receive the documents properly executed and the down payment. Until the modification is completed, we will continue to enforce our lien. If the conditions outlined above are not satisfied, the modification offer will be withdrawn."

Swoboda responded to the Bank by fax, stating in a cover letter that he accepted the LMA, but he requested certain changes to the contract itself. Swoboda did not sign the LMA or make the required down payment.

In January of 2009, the Bank notified Swoboda of a revised LMA. This notice contained the same warning as before, stating that the Bank would continue to enforce its lien unless the LMA was signed and the down payment was received. Swoboda signed the LMA as required, but he did not make the down payment, and the LMA was never implemented.

The Bank argues that it is entitled to judgment on the basis of the LMA, even though it was never implemented, because there are authorities that hold that the enforceability of an agreement is irrelevant for purposes of showing that an abandonment has occurred. *See, e.g., Snowden v. Deutsche Bank Nat'l Trust Co.*, No. H-14-2963, 2015 WL 5123436, at *3 (S.D. Tex. Aug. 31, 2015); *Mendoza v. Wells Fargo Bank, N.A.*, No. H-14-554, 2015 WL 338909, at *4 (S.D. Tex. Jan. 23, 2015); *In re Rosas*, 520 B.R. 534, 542 (W.D. Tex. 2014). But those authorities are distinguishable because the borrower in each case remitted post-acceleration payments that were accepted by the lender, meaning that the abandonment was established under the rule set forth in *Holy Cross Church*. By contrast, Swoboda remitted no such payments.

The Bank also argues that the mere offer of the LMA is enough to conclusively establish that the Bank abandoned the 2008 acceleration. But the problem with this argument is that the Bank's offers did not unequivocally manifest an abandonment. The offers were attached to notices that warned Swoboda that the Bank would continue to enforce its lien until certain conditions were met. Those notices raise a genuine issue of material fact as to whether the Bank had actually abandoned the prior acceleration. *See Pitts v. Bank of N.Y. Mellon Trust Co.*, —

S.W.3d —, 2018 WL 6716933, at *6 (Tex. App.—Dallas Dec. 21, 2018, no pet.) (holding that language in a notice that a foreclosure action remained pending raised a fact question as to whether the prior acceleration had been abandoned).

## B.    The June 15, 2009 Statement

The Bank's next argument relies on a monthly mortgage statement and on case law from the Fifth Circuit. We begin by addressing the case law.

According to the Fifth Circuit, abandonment is conclusively established when the lender sends the borrower a post-acceleration mortgage statement that requests a lesser payment than the entire accelerated balance. *See Ocwen Loan Serv., L.L.C. v. REOAM, L.L.C.*, 755 Fed. App'x 354, 356–57 (5th Cir. 2018) (per curiam). The lender's request for the lesser payment is sufficient by itself to complete the abandonment; no receipt of payment from the borrower is actually required. *See Leonard v. Ocwen Loan Serv., L.L.C.*, 616 Fed. App'x 677, 680 (5th Cir. 2015) (per curiam). This rule originates from an "*Erie* guess" that the "Texas Supreme Court would likely hold that a lender may unilaterally abandon acceleration of a note . . . by sending notice to the borrower that the lender is no longer seeking to collect the full balance of the loan and will permit the borrower to cure its default by providing sufficient payment to bring the note current under its original terms." *See Boren v. U.S. Nat'l Bank Ass'n*, 807 F.3d 99, 105 (5th Cir. 2015).

To our knowledge, the Texas Supreme Court has not yet answered whether abandonment is established as a matter of law by a post-acceleration mortgage statement requesting partial payment of the note. Our court has not yet spoken on that issue either, though we are aware that other Texas courts of appeals have applied the Fifth Circuit's rule. *See Brannick v. Aurora Loan Servs., LLC*, No. 03-17-00308, at *3 (Tex. App.—Austin Nov. 2, 2018, no pet. h.) (mem. op.); *NSL Prop. Holdings,*

*LLC v. Nationstar Mortg., LLC*, No. 02-16-00397-CV, 2017 WL 3526354, at *5 (Tex. App.—Fort Worth Aug. 17, 2017, pet. denied) (mem. op.).

We, of course, are not obligated to follow the Fifth Circuit, even on questions of federal law. *See Penrod Drilling Corp. v. Williams*, 868 S.W.2d 294, 296 (Tex. 1993) (per curiam). But for the sake of argument, we will assume without deciding that the Fifth Circuit's rule accurately reflects the law in Texas.

Now turning to the evidence, the Bank argues that it sent Swoboda a post-acceleration mortgage statement that satisfies the Fifth Circuit's rule. The statement, as it appears in our record, is just a single page in length. It has a notice about a bankruptcy filing. It itemizes the account activity since the last statement. And it contains two boxes of information, which we reproduce here:

| Account Information | |
|---|---:|
| Account Number | [redacted] |
| Current Statement Date | June 15, 2009 |
| Maturity Date | August 01, 2036 |
| Interest Rate | 9.40000 |
| Current Principal Balance | $224,960.66 |
| Current Escrow Balance | $23,108.67– |
| Interest Paid Year-to-Date | $0.00 |
| Taxes Paid Year-to-Date | $0.00 |

| Details of Amount Due/Paid | |
|---|---:|
| Principal and Interest | $1,894.36 |
| Subsidy/Buydown | $0.00 |
| Escrow | $1,957.25 |
| Unpaid Amount | $49,976.00 |
| Late Charges | $1,612.24 |
| Other | $2,345.95 |
| Total Unpaid Amount | $57,785.80 |
| Payment Date | April 01, 2008 |

The Bank argues that this statement conclusively establishes abandonment because the statement reflects the original maturity date in 2036, rather than the accelerated maturity date in 2008, and because it reflects an unpaid amount of $57,785.80, which is substantially less than the total principal balance that remained outstanding on the loan.

The problem with this argument is that nothing in the statement actually requests a payment from Swoboda, which is the basis of the Fifth Circuit's rule. The statement does not indicate that Swoboda could bring his account current by remitting a payment of $57,785.80 (or any other amount). And unlike another mortgage statement appearing in the record, this statement does not include the detachable "Mortgage Payment Coupon" that is supposed to be mailed back with the monthly installment payment. That coupon is where the "Total Amount Due" and request for payment would be located, if the other statement is any indication.

Based on the statement in our record, which appears to be an incomplete copy, we conclude that the Bank did not satisfy its burden of showing that it was entitled to judgment as a matter of law.

### C.     The 2009 Notice of Acceleration

In its next point, the Bank argues that its 2009 notice of acceleration is conclusive evidence that it abandoned the 2008 acceleration. As with the previous argument concerning the monthly mortgage statement, this argument presents a claim that the Bank abandoned the prior acceleration unilaterally.

To accomplish a unilateral abandonment, the lender must "so act as to justify the [borrower] in believing and acting upon the belief that the effect of the failure to pay an installment was to be disregarded, and that the contract should stand as if there had been no default." *See San Antonio Real Estate Bldg. & Loan Ass'n v.*

*Stewart*, 61 S.W. 386, 389 (Tex. 1901). The 2009 notice did nothing to justify Swoboda in believing or acting upon a belief that the original maturity date had been restored as if there had been no default. Quite the opposite, the 2009 notice reminded Swoboda that his default could not be disregarded.

At most, the 2009 notice reflected the Bank's own belief that the 2008 acceleration had been abandoned. That subjective belief is insufficient by itself to prove abandonment as a matter of law.

## D.    The Short Sale Discussions

After the 2008 acceleration, Swoboda listed his home on the market and executed a contract for sale with a third-party buyer. That sale eventually collapsed after the home inspection and appraisal. But while the sale remained pending, the Bank asserts that it agreed to treat the proposed transaction as a short sale. The Bank also argues that this short sale conclusively establishes that it abandoned the prior acceleration.

One of the Bank's notices to Swoboda explained that "a short sale requires the cooperation of a number of parties (you, the buyer, your real estate broker, and sometimes mortgage insurance companies and other lenders)." There is some indication that this cooperation was never achieved. In a letter it sent to Swoboda, the Bank acknowledged that Swoboda had made a "short sale request," but the Bank explained that it was unable to continue reviewing Swoboda's file because his realtor had "ceased to be involved in the short sale proceedings." When combined with the absence of any document that unequivocally manifests the Bank's agreement to the proposed short sale, this evidence raises a fact question as to whether the Bank had actually approved the short sale as an alternative to foreclosure.

The Bank also refers to a mediator's report as independent evidence of a short-sale agreement. The report, which was addressed to the trial court, briefly states the following:

> On September 14th I mediated the case with the parties and I am pleased to report that the parties were successful in resolving all claims in the lawsuit subject to and contingent upon terms which provide for the sale of the property that is the subject of the lawsuit. The parties either have or will file a motion asking the Court for a trial continuance to facilitate their agreement that the property be sold. The parties worked hard to reach an agreement in the case and I would encourage the Court to grant them the continuance necessary to allow for the time that it will take to sell the property.

Nowhere in this report is there mention of a "short sale." Also, the mediation occurred more than five months after the third-party buyer walked away from the deal, and there is no indication that another contract for sale was pending. And despite the statements from the mediator, the record does not contain any written agreement between the parties or motion for continuance regarding an anticipated short sale. In fact, during a subsequent deposition, a representative from the Bank testified that she did not believe that Swoboda ever received pre-approval for a short sale. On this record, the mediator's report does not conclusively establish that the Bank had agreed to a short sale, or that it had abandoned the prior acceleration.

In sum, the Bank did not carry its burden of proving abandonment as a matter of law, which means that the trial court erred by granting the Bank's cross-motion for summary judgment.

## SWOBODA'S MOTION

We now consider the grounds raised in Swoboda's motion for summary judgment. We begin with his limitations defense, and then proceed to certain ancillary issues.

12

### A. Limitations Defense

Because he moved for summary judgment on the basis of limitations, Swoboda had the initial burden of showing when the Bank's cause of action accrued. *See Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex. 1990). Swoboda correctly argued in his motion that the date of accrual was the date of acceleration, and that the Bank's 2008 notice of acceleration predated its 2013 foreclosure action by more than four years. This evidence established a limitations defense as a matter of law, which meant that the burden shifted to the Bank to raise a fact issue sufficient to defeat a summary judgment.

In its response, the Bank sought to avoid a summary judgment with evidence of abandonment. Because the Bank was just the nonmovant here, it only had to produce "some evidence" of abandonment, which is less demanding than the "conclusive evidence" standard that applied when the Bank was the movant. Under the "conclusive evidence" standard, the evidence had to be of such a character that "reasonable people could not differ in their conclusions." *See City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). But under the "some evidence" standard, the Bank only needed enough evidence that "would enable reasonable and fair-minded people to differ in their conclusions." *Id.* at 822.

The Bank satisfied this less demanding burden with the monthly mortgage statement from June 15, 2009. That statement postdated the 2008 notice of acceleration, but it identified the maturity date as being in 2036, rather than in 2008. A reasonable and fair-minded person could conclude from that later maturity date that the Bank had abandoned the prior acceleration and restored the note to its original terms. Therefore, the Bank raised a fact issue on the question of abandonment, which precluded a summary judgment on Swoboda's limitations defense.

13

## B.     Revival Statute

Section 16.069 of the Civil Practice and Remedies Code provides that if a counterclaim arises out of the same transaction or occurrence that is the basis of an action, then a party to the action may file the counterclaim "even though as a separate action it would be barred by limitation on the date the party's answer is required." Our court has explained that this revival statute permits a defendant to bring an otherwise time-barred counterclaim, except for when the plaintiff has sought a declaration on the statute of limitations itself. *See Holman St. Baptist Church v. Jefferson*, 317 S.W.3d 540, 545–46 (Tex. App.—Houston [14th Dist.] 2010, pet. denied); *accord Ball v. SBC Commc'ns, Inc.*, No. 04-02-00702-CV, 2003 WL 21467219, at *4 (Tex. App.—San Antonio June 25, 2003, pet. denied) ("Were we to hold that section 16.069 revives claims which are absolutely barred by limitations as a matter of law, the result would be that a litigant would never be able to seek a declaratory judgment based on limitations because a defendant could always use section 16.069 to defeat such a suit.").

Because Swoboda sought to quiet title on the basis of limitations, Swoboda argued in his motion for summary judgment that the Bank could not revive its time-barred foreclosure action "to the extent" that the Bank "may resort to arguing" that its action was viable as a counterclaim under Section 16.069. As the contingencies in Swoboda's argument reveal, the Bank did not seek to avoid a limitations bar on the basis of Section 16.069. In fact, Swoboda appears to have been the only party to address that statute in the trial court. On this posture, we think it would be advisory to address the merits of Swoboda's argument.

## C. Equitable Lien and Equitable Subrogation

To protect its interest in the property after Swoboda's default, the Bank advanced certain sums for the payment of *ad valorem* taxes and insurance. Under the terms of the deed of trust, those sums became the "additional debt" of Swoboda.

The Bank asserted in its pleadings that the advanced sums gave rise to an equitable lien, which was separate and apart from its contractual lien. The Bank also asserted that it was entitled to foreclose on that equitable lien pursuant to the doctrine of equitable subrogation.

Swoboda attacked this theory of recovery with several points in his motion for summary judgment.

First, Swoboda argued that the Bank could not rely on equity to avoid the statute of limitations. This argument fails because a claim for equitable subrogation may exist even after a contractual lien has been invalidated. *See LaSalle Bank Nat'l Ass'n v. White*, 246 S.W.3d 616, 620 (Tex. 2007) (per curiam).

Second, Swoboda argued that the Bank's theory of recovery was illegal, that it violated the Texas Constitution, and that it violated the terms of the deed of trust, insofar as the Bank sought to hold Swoboda personally liable for the advanced sums. These arguments fail because the Bank did not seek a money judgment against Swoboda. Instead, it sought judicial foreclosure of the equitable lien.

Third, Swoboda argued that the Bank could not recover on this equitable theory because the Bank voluntarily advanced the sums and it assumed the risk that Swoboda would not reimburse them. These points fail under controlling precedent. *See Smart v. Tower Land & Inv. Co.*, 597 S.W.2d 333, 338 (Tex. 1980) ("The mortgagee's interest in the security of his mortgage makes him more than a 'mere volunteer' when he pays taxes owed by the mortgagor.").

15

For the foregoing reasons, Swoboda did not establish that it was entitled to judgment as a matter of law, which means that the trial court correctly denied his motion for summary judgment.

## REMAINING POINTS

The Bank pleaded eleven affirmative defenses in its answer to Swoboda's original petition. Swoboda now argues on appeal that the Bank waived all of those defenses (with the exception of abandonment) because the Bank did not address them in its motion for summary judgment. Swoboda cites to no authority for this proposition, and we are aware of none. Therefore, on remand, we do not limit the Bank to only its abandonment defense.

Swoboda also argues on appeal that it is entitled to attorney's fees and that the trial court erred by considering the mediator's report. Based on our analysis of Swoboda's other issues, we need not consider the merits of these final points.

## CONCLUSION

The trial court's judgment is reversed and the case is remanded for additional proceedings consistent with this opinion.


/s/     Tracy Christopher
            Justice


Panel consists of Justices Christopher, Jewell, and Hassan.