# United States Court of Appeals
## For the First Circuit

No. 18-1647

UNITED STATES OF AMERICA,

Appellee,

v.

MARÍA RODRÍGUEZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, U.S. District Judge]

Before

Torruella, Boudin, and Barron,
Circuit Judges.

Derege B. Demissie and Demissie & Church on brief for appellant.
Jennifer Hay Zacks, Assistant United States Attorney, and Andrew E. Lelling, United States Attorney, on brief for appellee.

December 13, 2019

**BOUDIN, <u>Circuit Judge.</u>** María Rodríguez pled guilty to conspiring to possess and distribute heroin and fentanyl, in violation of 21 U.S.C. § 846, and was sentenced to sixty-six months in prison. She now appeals to contest her sentence, disputing the district court's drug quantity determination.

María Rodríguez admitted that, from July 2014 through September 23, 2015, she received heroin from her boyfriend Dedwin Cruz-Rivera on a regular basis, much of which she then supplied to her son William ("Will") Rodríguez, who distributed it to low-level resellers and users. As part of its investigation, the government wiretapped María and Will Rodríguez's phones for one and two months, respectively, during the fifteen-month conspiracy. Their dealings were corroborated by intercepts of Cruz-Rivera's phone, which was tapped for about sixth months over the course of a year.

In July 2017, María Rodríguez pled guilty without a plea agreement. The government's theory at sentencing was that María Rodríguez was her son's sole source of heroin and all drugs handled by him should be attributed to her. Based on its review of 140 intercepted conversations from María and Will Rodríguez's phones, the government estimated that during the three-month span of the wiretaps, Will Rodríguez had distributed at least 1,261 grams of heroin and María Rodríguez had distributed at least 200 grams of heroin to customers other than Will. This made María Rodríguez

responsible for at least 1,461 grams of heroin. The government only included intercepts where a deal for a specific amount of heroin was struck, assigned the lowest conceivable value to any transaction where the drug amount was ambiguous, and did not extrapolate beyond the three months of wiretap data it had collected despite evidence that María Rodríguez and her son were distributing heroin throughout the entire fifteen-month conspiracy.

The presentence report ("PSR") agreed with the government's analysis of the intercepts, but because the amounts of heroin attributed to María Rodríguez were based on "wiretaps and estimates," and Will Rodríguez "could have had an alternative source of supply unknown to the government," the PSR said it was "reasonable, if not conservative, to conclude that [she was] accountable for at least 700 grams, but not more than 1 kilogram of heroin." PSR ¶ 92. Although both parties initially objected to the PSR's calculation of drug quantity, defense counsel later accepted probation's calculation.

The district court ruled that the PSR understated María Rodríguez's involvement and that the probation officer's hypothetical adjustment stemmed from speculation, not fact. Instead, the court adopted the government's estimate and found María Rodríguez responsible for more than one kilogram of heroin, resulting in a base offense level of thirty. Granting a two-level

reduction in offense level for a safety valve proffer, a three-level reduction for acceptance of responsibility, and a criminal history category of I, the district court fixed the guideline sentencing range ("GSR") as fifty-seven to seventy-one months of imprisonment and imposed a sentence of sixty-six months.

The only issue on appeal is the district court's drug quantity determination. Factual findings by the district court as to drug quantity are reviewed for clear error, United States v. Rodríguez-Lozada, 558 F.3d 29, 42 (1st Cir. 2009), and no such error occurred here.

A sentencing judge's task in attributing drug quantity in a distribution conspiracy is challenging. Important though is the calculation, see U.S.S.G § 2D1.1(c), the sentencing judge is often given limited data to work with and typically lacks the type of resources mustered for a trial. Thus, the sentencing guidelines require only that the district court "approximate the amount" of drugs at issue, id. § 2D1.1 cmt. n.5, and "we uphold such an approximation as long as it represents a reasoned estimate of quantity," United States v. Webster, 54 F.3d 1, 5 (1st Cir. 1995).

Here, the district court sensibly concluded that the government had presented a reasonable, and likely quite conservative, estimate of the heroin attributable to María Rodríguez, and that the PSR had reduced it without good cause. The government described how it had interpreted the intercepted

conversations from María and Will Rodríguez's phones. Given that defense counsel did not contest those interpretations, the district court reasonably accepted that the government's account of the transactions caught on the intercepts was sound.

Defense counsel's main objection was that the government's analysis held María Rodríguez accountable for all of Will Rodríguez's sales even where there was no direct evidence that she was involved. The district court did not ascribe all of Will Rodríguez's sales to María Rodríguez, but instead determined that she was responsible for over one kilogram of heroin based upon several considerations: the "snapshots" of Will Rodríguez's drug transactions caught on the intercepts, the evidence María Rodríguez was her son's "principal supplier," their ongoing relationship at the time the wiretaps began, and the conservative amounts counted by the government's analysis. During months of physical surveillance and wiretapped conversations, Will Rodríguez never bought or spoke about buying heroin from anyone but his mother, even when she could not supply him with the heroin he requested. A sentencing judge may "draw reasonable inferences from information contained in the sentencing record," United States v. Cintrón-Echautegui, 604 F.3d 1,7 (1st Cir. 2010), and here the record supports the reasonable inference--upheld on clear error review--that María Rodríguez was her son's principal source

of supply, see United States v. Bernier, 660 F.3d 543, 547 (1st Cir. 2011).

Neither the PSR, nor defense counsel, offered any other reason showing why the government's estimate, comprised of only three months' worth of drug transactions during a fifteen-month conspiracy, should be further cut in half. Having reasonably concluded that the government's estimate, if anything, understated María Rodríguez's involvement, the district court did not err in adopting it.

**Affirmed.**