**Affirmed as Modified and Majority and Concurring Opinions filed April 27, 2021.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-19-00337-CV

---

### CITIBANK N.A. AS TRUSTEE FOR NRZ PASS-THROUGH TRUST VI AND NEWREZ LLC F/K/A NEW PENN FINANCIAL LLP D/B/A SHELLPOINT MORTGAGE SERVICING, Appellants

### V.

### PECHUA, INC., Appellee

---

**On Appeal from the 215th District Court
Harris County, Texas
Trial Court Cause No. 2016-83417**

---

## MAJORITY OPINION

Among other claims, appellee Pechua, Inc. sought a declaratory judgment confirming that the statute of limitations barred appellants, Citibank N.A. as trustee for NRZ Pass-Through Trust VI and Newrez LLC f/k/a New Penn Financial LLP d/b/a Shellpoint Mortgage Servicing, from foreclosing on property owned by Pechua. The trial court granted Pechua's motion for summary judgment, which

asserted that the statute of limitations barred any foreclosure action, denied appellants' motion, which asserted limitations did not bar foreclosure, and dismissed all the parties' other claims with prejudice. Concluding that the trial court erred in granting Pechua's motion and in denying appellants' motion, we modify the judgment to state that Pechua takes nothing on its declaratory judgment action. We affirm the judgment as so modified.

### *Background*

In 2003, the Mackingtees, a husband and wife, obtained a home equity loan for $229,000.21, with an interest rate of 11.74 percent and a maturity date of November 24, 2031. The loan was secured by a security instrument, which created a lien on the property at issue in this case favoring the lender and all its successors and assigns. The current assignee of the note and the security instrument is Citibank, in its capacity as trustee, and the current servicer of the loan is Shellpoint. For ease of reference, we identify these entities and all their predecessors in interest as "the Bank."

The security instrument contains an acceleration clause, which permits the Bank to accelerate the full balance of the loan in the event of a default by the Mackingtees. On March 4, 2009, the Bank filed a Rule 736 application for foreclosure, alleging the Mackingtees had defaulted on the loan by failing to make the required monthly payments beginning on May 29, 2008 and that the loan had been accelerated. Tex. R. Civ. P. 736. A court signed an order authorizing foreclosure on June 15, 2009, noting that the Bank had provided the requisite notices to accelerate the maturity of the debt and foreclose on the property.

In July 2009, the Mackingtees filed the first of several bankruptcies. The Bank received relief from the bankruptcy court—which lifted the automatic bankruptcy stay in regard to the property—on January 5, 2011. The Mackingtees

2

filed for bankruptcy again on October 4, 2011, and that bankruptcy proceeding was dismissed on January 7, 2015 and closed on April 28, 2015. On January 16, 2015, the Mackingtees filed for bankruptcy again, and the bankruptcy court confirmed their chapter 13 plan on May 19, 2015.

On June 20, 2015, the Bank provided the Mackingtees with notice that the loan was in default, the default could be cured by paying the total past due amounts, and if the default was not cured by a specified date, the loan would be accelerated. The Bank provided a second similar notice on March 2, 2016, which included a higher amount that was past due. The details of these notices will be discussed further below. On April 29, 2016, the Bank provided notice to the Mackingtees that the loan had been accelerated.

On July 26, 2016, the Bank again filed a Rule 736 application for foreclosure. The trial court issued an order authorizing foreclosure in November 2016, and a foreclosure sale was scheduled for December. However, before the foreclosure sale could occur, the Mackingtees sold the property to Pechua, which then filed the present lawsuit against the Bank. As stated above, Pechua's claims included a declaratory judgment action seeking a declaration that the four-year statute of limitations had elapsed, barring any defendant from conducting a judicial or nonjudicial foreclosure. The Bank answered and raised a counterclaim for an equitable lien in the event the security instrument was deemed void.

The parties traded traditional motions for partial summary judgment on Pechua's declaratory judgment/statute of limitations claim. The trial court granted Pechua's motion and denied the Bank's. The parties then filed an Agreed Motion for Entry of Final Judgment, in which they stated "[t]o make the summary judgment order a final and appealable order, the parties agree to dismiss any and all remaining claims for relief against any and all other parties." In its final

3

judgment, the trial court granted the parties' joint motion, dismissed all remaining claims not addressed in the summary judgment proceedings with prejudice, and declared that the effect of the prior partial summary judgment was to render the security instrument invalid and void due to the expiration of the applicable statute of limitations on foreclosure of the property.

## *Discussion*

In its sole issue on appeal, the Bank contends that the trial court erred in granting Pechua's motion for summary judgment and in denying the Bank's motion. We will begin by setting out the parties' basic arguments. We will then set forth the governing law on these issues before turning to the application of the law to the arguments and facts presented.

## I. Arguments of the Parties

In its motion for summary judgment and appellate briefing, Pechua contends that the statute of limitations for the Bank's right to foreclose on the property began to run by at least March 4, 2009, when the Bank filed its application for foreclosure, and elapsed four years later. On this basis, Pechua contends that the trial court correctly concluded that the security instrument is now invalid and void and the Bank is barred from conducting a judicial or nonjudicial foreclosure of the property.

In its motion and briefing, the Bank raises three arguments. First, the Bank contends that there is insufficient evidence in the record to prove that the loan was accelerated in 2009 and thus insufficient evidence to demonstrate that the statute of limitations began to run at that time. Second, the Bank asserts that even if limitations began to run in 2009, the Mackingtees' several bankruptcies tolled the running of limitations during the periods in which the automatic bankruptcy stay

4

was in place. Third, the Bank asserts that the notices of default and opportunity to cure sent to the Mackingtees in 2015 and 2016 effectively abandoned any 2009 acceleration of the loan, thus the limitations period was restarted when the loan was again accelerated in 2016. Pechua, of course, disputes the Bank's arguments and asserts that even if limitations was tolled by the Mackingtees' bankruptcies, the statute still elapsed before the Bank's attempt to foreclose on the property.

## II. Governing Law

**Summary judgments.** When, as here, both parties move for summary judgment and the trial court grants one motion and denies the other, we consider all questions presented, examine all of the evidence provided, and if the trial court erred, render the judgment the trial court should have rendered. *Tex. Workforce Comm'n v. Wichita Cty.*, 548 S.W.3d 489, 492 (Tex. 2018).

We review summary judgments de novo. *Id*. To prevail on a traditional motion for summary judgment, the movant must show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Tex. Workforce Comm'n*, 548 S.W.3d at 492. When deciding whether a fact issue has been raised, we consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

**Limitations, acceleration, and abandonment.** A secured lender must bring suit to foreclose on a real property lien "not later than four years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code § 16.035(a). As a general rule, the accrual date is the maturity date of the note, rather than the date of a borrower's default. *See id*. § 16.035(e). If, as here, the security instrument contains an optional acceleration clause, the cause of action accrues when the lender

exercises its option to accelerate the maturity date of the note. *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001). Effective acceleration requires both notice of intent to accelerate and notice of acceleration, and both notices must be clear and unequivocal. *Id*.

Once a lender has accelerated the maturity date of the note, the lender can restore the original maturity date—and therefore reset the running of limitations—by abandoning the acceleration as though it never happened. *Id*. at 566–67. Abandonment is based on the concept of waiver and requires proof that the party has an existing right, has actual knowledge of the right, and intends to relinquish the right or engages in intentional conduct inconsistent with the right. *See Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 778 (Tex. 2008). Intent is the critical element, and its manifestation must be unequivocal. *Swoboda v. Ocwen Loan Servicing, LLC*, 579 S.W.3d 628, 633 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

The best means of achieving an abandonment is through written notice of rescission. *Id*. (citing Tex. Civ. Prac. & Rem. Code § 16.038(a) (providing for this method)). But that method is not exclusive. *Id*. (citing Tex. Civ. Prac. & Rem. Code § 16.038(e)). Abandonment can also be accomplished through an agreement between the parties, through other joint actions, or through unequivocal, unilateral conduct of the lender. *See id*. at 633, 635-36. For example, abandonment occurs when the borrower resumes making installment payments after an event of default and the lender accepts those payments without exacting any remedies available to it despite a previously declared acceleration. *See Holy Cross*, 44 S.W.3d at 566–67. Whether a lender has abandoned an acceleration is generally a question of fact, but when the facts are admitted or clearly established, abandonment may be determined as a matter of law. *Swoboda*, 579 S.W.3d at 633 (citing *Holy Cross*

6

*Church*, 44 S.W.3d at 566–67).

## III. Analysis

As stated, Pechua's position is that the statute of limitations for the Bank's right to foreclose on the property accrued in 2009 when the Bank filed its application for foreclosure and elapsed four years later. The Bank argues (1) the evidence is insufficient to prove the loan was accelerated in 2009, (2) the Mackingtees' bankruptcies tolled the running of limitations, and (3) the Bank abandoned the 2009 acceleration by sending notices of default and opportunity to cure in 2015 and 2016. For the reasons discussed below, we do not address the merits of the Bank's first argument. We conclude that the Bank is correct that the bankruptcies tolled the statute of limitations, the 2009 acceleration was abandoned, and accordingly, the trial court erred in granting Pechua's motion and denying the Bank's motion.

**2009 acceleration.** The Bank first asserts that Pechua failed to present evidence conclusively establishing that the loan was accelerated in 2009. The Bank does not contend, however, that it conclusively established the loan was not accelerated in 2009, which would be required for this argument to support the Bank's own traditional motion for summary judgment. *See* Tex. R. Civ. P. 166a(c); *Tex. Workforce Comm'n*, 548 S.W.3d at 492. This argument therefore is only aimed at demonstrating that the trial court erred in granting Pechua's motion for summary judgment—a reverse and remand point and not a reverse and render point.

Pechua argues primarily that the 2009 Rule 736 application for foreclosure and the court order authorizing foreclosure conclusively established that proper notice occurred. In the order, the court held that the Bank had provided the requisite notices to accelerate the maturity of the debt and foreclose on the lien. For

7

purposes of this opinion, we will presume without deciding that the loan was accelerated in 2009. As explained below, the Bank did not need to conclusively establish that the loan was not accelerated in 2009 to be entitled to summary judgment.

**Tolling of limitations.** In its second argument, the Bank contends that the Mackingtee's bankruptcies tolled the running of limitations.[1] As Pechua points out, we have previously held that federal bankruptcy law itself does not provide for the tolling of applicable state time limits but only provides for some deadlines to be extended by 30 days. *See Gantt v. Gantt*, 208 S.W.3d 27, 30–31 (Tex. App.—Houston 2006, pet. denied) ("By its express terms, 11 U.S.C. § 108(c) tolls no time limits, but provides only for some deadlines to be extended for 30 days after notice of the termination of a bankruptcy stay."). However, as we also explained in *Gantt*: "Beyond this, a time period may be further suspended only if mandated by other federal or state law incorporated through section 108(c)." *Id*. at 31.

Although neither we nor the Texas Supreme Court have expressly addressed the issue in a published, precedential opinion, several of our sister courts and the Fifth Circuit have concluded that tolling principles of Texas common law are incorporated through section 108(c) such that filing for bankruptcy tolls the running of limitations.[2] *See, e.g.*, *Rose v. Select Portfolio Servicing, Inc.*, 945 F.3d

---

[1] Success on this argument is necessary for the bank to prevail because, otherwise, more than four years would have elapsed from the 2009 acceleration to the alleged 2015 and 2016 abandonment of that acceleration. However, the parties appear to agree that any tolling by the bankruptcies is not sufficient by itself because even including the tolled periods, the statute would have run before the Bank foreclosed on the property.

[2] 11 U.S.C. § 108(c) states in full:

Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period

226, 229 (5th Cir. 2019); *HSBC Bank USA, N.A., as Tr. for Merrill Lynch Mortg. Loan v. Crum*, 907 F.3d 199, 204-05 (5th Cir. 2018); *Aflatouni v. Montoya*, No. 02-13-00064-CV, 2015 WL 1956357, at *5 (Tex. App.—Fort Worth Apr. 30, 2015, no pet.) (mem. op.); *Cade v. Stone*, No. 13-12-00630-CV, 2013 WL 3009853, at *5 & n.30 (Tex. App.—Corpus Christi June 13, 2013, no pet.) (mem. op.); *Bashaw v. State*, No. 03-05-00745-CV, 2007 WL 1518063, at *3 (Tex. App.—Austin May 25, 2007, no pet.) (mem. op.); *Peterson v. Tex. Commerce Bank-Austin, Nat. Ass'n*, 844 S.W.2d 291, 294 (Tex. App.—Austin 1992, no pet.).[3] This is because under Texas common law, "[w]here a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his right." *Peterson*, 844 S.W.2d at 294 (quoting *Hughes v. Mahaney & Higgins*, 821 S.W.2d 154, 157 (Tex. 1991)) (internal quotation marks removed). We recognized this line of cases in *Gantt* but did not follow it because the issue in *Gantt* involved appellate timetables, not statutes of limitations. 208 S.W.3d at 31 & n.7-8.

Today we join this line of cases and hold that the Mackingtees' bankruptcies tolled the running of the statute of limitations on the Bank's right of foreclosure. To hold otherwise would contradict the Texas Supreme Court's admonition in

---

has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

[3] We held similarly in a pre-2003, unpublished opinion without precedential value. *See Cain v. Bank United of Tex., FSB*, No. 14-95-00601-CV, 1997 WL 428054, at *5 (Tex. App.—Houston [14th Dist.] July 31, 1997, writ denied) (mem. op., not designated for publication).

*Hughes*, 821 S.W.2d at 157.

**Abandonment.** In its third argument, the Bank asserts that the notices of default sent to the Mackingtees in 2015 and 2016 abandoned any 2009 acceleration of the loan, thus the limitations period was restarted when the loan was again accelerated in 2016. The key question here is whether the notices in question unequivocally manifested an intent to unilaterally abandon the prior acceleration. *See, e.g.*, *Swoboda*, 579 S.W.3d at 633-34. We will focus our attention on the March 2, 2016 notice because the intent behind it is clearer.

The March 2016 notice is titled Notice of Intent to Accelerate and reads in relevant part as follows:

> The above referenced loan is in default because the monthly payment(s) due on and after 03/29/2011 have not been received. The amount required to cure this delinquency as of the date of this letter is $140,418.12 . . . .
>
> SUBSEQUENT PAYMENTS, LATE CHARGES, AND OTHER FEES WILL BE ADDED TO THE ABOVE STATED REINSTATEMENT AMOUNT AS THEY ARE ASSESSED.
>
> ONLY CERTIFIED FUNDS (CASHIER'S CHECK, MONEY ORDER OR OTHER AVAILABLE CERTIFIED FUND PAYMENT METHODS) WILL BE ACCEPTED. Remit these funds directly to: [address omitted]
>
> If the Total Due is not in our possession by 04/06/2016, . . . we intend to initiate foreclosure proceedings and will accelerate the loan balance as soon as allowable under applicable laws and regulations. In such case, your property will be sold at a duly held foreclosure sale or sheriff's sale and you will be required to vacate the premises.
>
> Partial payments received may be applied to any amounts outstanding, but any partial payments that are applied will not invalidate our right to commence foreclosure proceedings.
>
> If we do accelerate the balance due, you will have the right to reinstate your mortgage loan after acceleration. You will also have the right to bring a court action to assert the non-existence of a default or any

10

other defense which you may have to the acceleration and foreclosure or sale.

Important aspects of the notice include that it stated (1) the Mackingtees could cure the default or bring the note current by paying the past due amounts, not an accelerated amount; (2) the loan would be accelerated if the past due amounts were not received by the specified date; and (3) if the loan is accelerated, the Mackingtees would still have the right to reinstate the loan after acceleration. Each of these statements indicates a clear intent to accelerate the loan in the future if the default is not cured and not to continue to pursue a prior acceleration. The title of the notice, Notice of Intent to Accelerate, is also forward looking and suggests any prior acceleration was no longer sought to be enforced.

Several courts presented with substantially similar circumstances have held that a notice such as the March 2016 notice unequivocally manifested an intent to unilaterally abandon the prior acceleration. *See, e.g.*, *Boren v. U.S. Nat'l Bank*, 807 F.3d 99, 105-06 (5th Cir. 2015) (applying Texas law); *Brannick v. Aurora Loan Servs., LLC*, No. 03-17-00308-CV, 2018 WL 5729104, at *3 (Tex. App.—Austin Nov. 2, 2018, no pet. h.) (mem. op.); *Bracken v. Wells Fargo Bank, N.A.*, No. 05-16-01334-CV, 2018 WL 1026268, at *4 (Tex. App.—Dallas Feb. 23, 2018, pet. denied) (mem. op.); *Emmert v. Wilmington Sav. Fund Soc'y, F.S.B.*, No. 02-17-00119-CV, 2018 WL 1005002, at *3 (Tex. App.—Fort Worth Feb. 22, 2018, no pet.) (mem. op.). In each of these cases, and several others, the appellate courts affirmed a summary judgment where the lender asserted it had conclusively established abandonment of a previous acceleration by sending the borrower a notice of default that (1) demanded payment of only the past due amounts and not the full accelerated amount and (2) stated that if the borrower failed to pay the demanded amount, then the maturity date of the note would be accelerated. *See Boren*, 807 F.3d at 105-06; *Brannick*, 2018 WL 5729104, at *3; *Bracken*, 2018

11

WL 1026268, at *4; *Emmert*, 2018 WL 1005002, at *3.

In arguing that the March 2016 notice was insufficient to establish abandonment, Pechua cites our recent opinion in *Swoboda*, where we distinguished the Fifth Circuit's *Boren* opinion. The facts in the present case, however, are more similar to those in *Boren* and the other cited cases than they are to the situation addressed in *Swoboda*. In *Swoboda*, the lender relied upon both a monthly statement and a "notice of acceleration" to prove that it had abandoned a prior acceleration. 579 S.W.3d at 635-36. We rejected the monthly statement, which appeared to be an incomplete document, as conclusive evidence of abandonment because nothing in the statement actually requested a payment or informed the borrower that he could bring his account current by remitting a payment of the amount past due or any amount. *Id.*[4] Here, the March 2016 notice clearly requested a payment ("Remit these funds directly to") and informed the Mackingtees that they could bring the note current by paying the past due amounts.

We rejected the "notice of acceleration" in *Swoboda* as evidence of abandonment because that notice reminded the borrower that the default could not be disregarded and did nothing to support a belief that the original maturity date had been restored. *Id.* at 636. Here, as set forth above, the March 2016 notice contained several indications of an intent to accelerate the loan in the future that were clearly inconsistent with an intent to continue to pursue the prior acceleration. We join the other courts that have held such statements in a notice unequivocally manifested an intent to unilaterally abandon the prior acceleration. *See, e.g.*, *Boren*, 807 F.3d at 105-06; *Brannick*, 2018 WL 5729104, at *3; *Bracken*, 2018 WL

---

[4] We held, however, that the statement was some evidence of abandonment sufficient to raise a fact issue and prevent summary judgment favoring the borrower because the statement reflected the original loan maturity date, which was in the future, and not the date of the prior acceleration. *Swoboda*, 579 S.W.3d at 637.

12

1026268, at *4; *Emmert*, 2018 WL 1005002, at *3.[5]

Pechua also asserts that the March 2016 notice was simply a reminder of the Mackingtees' right under the security agreement to reinstate the loan after an acceleration. The notice does include a reminder of that contractual right, stating, "If we do accelerate the balance due, you will have the right to reinstate your mortgage loan after acceleration." However, even that sentence suggests any prior acceleration has been abandoned, as do several other portions of the notice as described above. Language stating the loan would be accelerated in the future is inconsistent with continued pursuit of a prior acceleration. *See, e.g.*, *Pitts v. Bank of N.Y. Mellon Trust Co.*, 583 S.W.3d 258, 265 (Tex. App.—Dallas 2018, no pet.).

Lastly, Pechua contends that a nonwaiver clause in the security agreement prevented the Bank from abandoning its 2006 acceleration of the note. The clause in question states in relevant part: "**Forbearance By Lender Not a Waiver.** . . . Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy." Contrary to Pechua's assertion, this clause does not prohibit the Bank from abandoning a prior acceleration. The abandonment of a specific event of acceleration and the waiver of the right to accelerate and foreclose are distinct concepts. *Bracken v. Wells Fargo Bank, N.A.*, No. 05-16-01334-CV, 2018 WL 1026268, at *2 (Tex. App.—Dallas Feb. 23, 2018, pet. denied) (mem. op.) (citing *Justice v. Wells Fargo Bank N.A.*, 674 Fed. Appx. 330, 335 (5th Cir. 2016) (per curiam)); *see also Ocwen Loan Servicing, L.L.C. v.*

---

[5] We also distinguish the Dallas Court of Appeals' opinion in *Pitts v. Bank of New York Mellon Trust Co.*, in which the court emphasized that the monthly statement and delinquency notices at issue did not contain language indicating that if the borrower did not pay the amount demanded, the loan would be accelerated. 583 S.W.3d 258, 265 (Tex. App.—Dallas 2018, no pet.). The March 2016 notice in this case did contain such language. We additionally note the *Pitts* court held that even without such language, the monthly statement and delinquency notices raised a genuine issue of material fact precluding summary judgment favoring the borrower on the abandonment issue. *Id*. at 267.

*REOAM, L.L.C.*, 755 F. App'x 354, 357 (5th Cir. 2018) (per curiam) ("[R]eliance on the anti-waiver clause to distinguish this case from *Boren* . . . is unavailing; the provision's preservation of [the] lender's right to accelerate in the future did not affect its ability to abandon an existing acceleration.").[6]

The summary judgment evidence conclusively established that the Bank abandoned its 2006 acceleration and restored the note's original maturity date when it sent the Mackingtees the March 2016 Notice of Intent to Accelerate. *See Wolf*, 44 S.W.3d at 566. The limitations period then was restarted when the loan was again accelerated in April 2016. Accordingly, the trial court erred in granting Pechua's motion for summary judgment and in denying the Bank's motion, and we sustain the Bank's sole issue.

### *Conclusion*

We modify the trial court's judgment to state that Pechua takes nothing on its declaratory judgment action seeking a declaration that the statute of limitations barred the Bank from conducting a judicial or nonjudicial foreclosure on the property that is the subject of this lawsuit. We affirm the judgment as so modified.

---

[6] Pechua cites three cases involving nonwaiver provisions, each of which is readily distinguishable. In *Robinson v. Wells Fargo Bank, N.A.*, the court cited the nonwaiver provision as part of its reasoning as to why the lender's delaying foreclosure proceedings and entering loan modification discussions did not waive the lender's right to foreclose. 576 F. App'x 358, 363–64 (5th Cir. 2014) (per curiam). In *Richardson v. Wells Fargo Bank, N.A.*, the court cited the nonwaiver clause in holding that the lender did not waive a right to accelerate and foreclose on the loan where the lender repeatedly asserted its right to those remedies and made no action or omission that could be construed as an intent to no longer assert its claim. 873 F.Supp.2d 800, 810 (N.D. Tex. 2012). The nonwaiver provision in *Hardy v. Wells Fargo Bank, N.A.*, was not like the one in the present case and was contained in a Stipulated Partial Reinstatement/Repayment Agreement, not a security agreement. No. 01–12–00945–CV, 2014 WL 7473762, at *2 (Tex. App.—Houston [1st Dist.] December 30, 2014, no pet.).

14

/s/     Frances Bourliot
Justice


Panel consists of Justices Wise, Bourliot, and Spain (Spain, J., concurring).