**HOLY CROSS CHURCH OF GOD IN CHRIST, Petitioner,**

v.

**Johnny WOLF, Respondent.**

No. 00–0250.

Supreme Court of Texas.

Argued Dec. 6, 2000.

Decided April 12, 2001.

Rehearing Overruled June 21, 2001.

Susan Lea Hays, Shawn Preston Ricardo, Jeffrey Michael Goldfarb, Akin Gump Strauss Hauer & Feld, Dallas, for petitioner.

William Bret, III, Given & Bret, Dallas, for respondent.

Justice BAKER delivered the opinion of the Court.

We decide two issues in this case: (1) whether a noteholder must take affirmative steps towards foreclosure, in addition to serving a debtor with notice of acceleration, to effectively accelerate a note secured by real property and thereby trigger limitations; and (2) whether the Texas four-year or the federal six-year statute of limitation applies to the noteholder's claim in this case.

Holy Cross Church of God in Christ sued Johnny Wolf seeking a declaratory judgment that the Texas four-year limitations statute barred Wolf's foreclosure of the Church's property. The trial court granted the Church summary judgment on that ground. The court of appeals held that an optional acceleration clause cannot be effectively exercised without the noteholder's taking specific affirmative steps towards foreclosure. Because the Church did not present summary-judgment evidence that Wolf's predecessor had taken these affirmative steps, the court of appeals reversed the summary judgment,

concluding that the Church did not carry its burden of proving conclusively when Wolf's cause of action accrued. For this reason, the court did not reach the question of whether the four-year or six-year statute of limitations applied.

We hold that, absent evidence of abandonment or a contrary agreement between the parties, a clear and unequivocal notice of intent to accelerate and a notice of acceleration is enough to conclusively establish acceleration and therefore accrual. Thus, we conclude the Church did conclusively prove when the Church's note was accelerated, and consequently, when Wolf's cause of action accrued. We also conclude that the Texas four-year limitations period applies here. We hold that the FDIC's six-year limitations period only enures to a subsequent noteholder's benefit if a claim accrues on the note before the FDIC transfers the note. Accordingly, we reverse the court of appeals' judgment and render judgment for the Church.

## I. BACKGROUND

In June 1987, Holy Cross Church executed a $140,000, twenty-year promissory note payable to Wynnewood Bank and secured by a deed of trust on its South Dallas church property. Wynnewood Bank failed and Continental Bank succeeded it. Continental Bank also eventually failed and the Federal Deposit Insurance Corporation (FDIC) became its receiver and holder of the Church's note. While the FDIC held the Church's note, the Church could not make its $1,640.20 monthly payment but paid $500 a month to show good faith. The FDIC and the Church agreed to settle the note for $75,000. The Church was unable to pay this amount on the due date. However, even though the Church remained in default, the FDIC did not accelerate the note. The FDIC then sold the note to Mortgage Investment Trust Corporation (MITC).

On July 15, 1994, MITC sent the Church a notice of default and intent to accelerate. On August 15, and again on September 8, MITC sent the Church letters indicating it had accelerated the note. Both letters specified dates for nonjudicial foreclosure sales. But MITC never actually foreclosed and the Church did not resume payments. On August 1, 1995, MITC sold the note to Great Plains Capital Corporation. Finally, on February 2, 1998, Great Plains sold the note to Johnny Wolf.

On February 23, 1998, Wolf's attorney sent the Church a letter informing it that Wolf now owned the note and that the note was in default. On July 29, Wolf's attorney sent another letter stating that the "maturity of the aforesaid note has occurred and full payment of the balance of same is now due and owing." On September 11, Wolf's attorney sent a notice of foreclosure on the promissory note explaining a foreclosure sale was scheduled for October 6. On the sale date, a trial court granted the Church a temporary injunction to prevent the sale. Nevertheless, the trustee held the sale and Wolf purchased the property.

The Church sued Wolf for a declaratory judgment that the foreclosure sale was void because limitations barred Wolf's foreclosure. The Church also pleaded wrongful foreclosure, unjust enrichment, and constructive trust but later nonsuited these claims without prejudice. The parties then agreed to a temporary injunction. Subsequently, the Church moved for summary judgment, arguing that MITC's August 15, 1994, demand and acceleration triggered the limitations period on Wolf's claim. Thus, the Church argued, limitations had run on August 15, 1998, almost two months before the foreclosure sale.

In response, Wolf agreed that limitations began to run on August 15, 1994. However, he argued that because the FDIC had once owned the note, the six-year limitations period afforded federal receivers applied rather than the Texas four-year period. He filed a cross-motion for summary judgment, contending that limitations did not bar the foreclosure because the federal statute applied. He also argued the Church lacked standing to sue, but he abandons that argument here. *See* Tex.R.App. P. 74(f). The trial court granted the Church's summary-judgment motion on limitations grounds, declared the Church's obligations under the deed and note time-barred, declared the sale void, and ordered the Church vested with fee simple title to the property.

Wolf appealed, arguing that the six-year federal limitations period governed his claim. The court of appeals did not reach the limitations issue. Instead, the court concluded that a fact question existed about when Wolf's claim accrued. Thus, it held that the trial court erroneously granted the Church's motion and reversed and remanded the claims. —— S.W.3d at ——, 1999 WL 33256589.

## II. APPLICABLE LAW

### A. Summary Judgment—Standard of Review

■ A party moving for summary judgment must conclusively prove all elements of its cause of action or defense as a matter of law. Tex.R. Civ. P. 166a(c); *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex.1999); *Walker v. Harris,* 924 S.W.2d 375, 377 (Tex.1996). When both sides move for summary judgment and the trial court grants one motion but denies the other, the reviewing court should review both sides' summary judgment evidence, determine all questions presented, and render the judgment that the trial court should have rendered. *FM Props. Operating Co. v. City of Austin,* 22 S.W.3d 868, 872 (Tex.2000). A party moving for summary judgment on limitations grounds must prove when the cause of action accrued. *Burns v. Thomas,* 786 S.W.2d 266, 267 (Tex.1990).

### B. Accrual

By statute, if a series of notes or obligations or a note or obligation payable in installments is secured by a lien on real property, limitations does not begin to run until the maturity date of the last note, obligation, or installment. Tex. Civ. Prac. & Rem.Code § 16.035(e); *Swedlund v. Banner,* 970 S.W.2d 107, 111 (Tex.App.—Corpus Christi 1998, pet. denied). Section 16.035 modifies the general rule that a claim accrues and limitations begins to run on each installment when it becomes due. *See Palmer v. Palmer,* 831 S.W.2d 479, 481–82 (Tex.App.—Texarkana 1992, no writ).

■ If a note or deed of trust secured by real property contains an optional acceleration clause, default does not ipso facto start limitations running on the note. Rather, the action accrues only when the holder actually exercises its option to accelerate. *Hammann v. H.J. McMullen & Co.,* 122 Tex. 476, 62 S.W.2d 59, 61 (1933); *Curtis v. Speck,* 130 S.W.2d 348, 351 (Tex. Civ.App.—Galveston 1939, writ ref'd). Effective acceleration requires two acts: (1) notice of intent to accelerate, and (2) notice of acceleration. *See Shumway v. Horizon Credit Corp.,* 801 S.W.2d 890, 892 (Tex. 1991); *Ogden v. Gibraltar Sav. Ass'n,* 640 S.W.2d 232, 233 (Tex.1982). Both notices must be "clear and unequivocal." *Shumway,* 801 S.W.2d at 893. Even when a noteholder has accelerated a note upon default, the holder can abandon acceleration if the holder continues to accept pay-

ments without exacting any remedies available to it upon declared maturity. *City Nat'l Bank v. Pope*, 260 S.W. 903, 905 (Tex.Civ.App.—San Antonio 1924, no writ); *see also San Antonio Real Estate, Bldg. & Loan Ass'n v. Stewart*, 94 Tex. 441, 61 S.W. 386, 388 (1901) (explaining that the parties' agreement or actions can "have the effect of obviating the default and restoring the contract to its original condition as if it had not been broken"); *Denbina v. City of Hurst*, 516 S.W.2d 460, 463 (Tex.Civ.App.—Tyler 1974, no writ) (explaining that an option to accelerate may be withdrawn or revoked after it is exercised by the noteholder, effectively restoring the note's original maturity date).

Federal law provides a different scheme for determining accrual of foreclosure actions brought by the FDIC. The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA) provides that limitations on FDIC claims begins to run on the later of (1) the date the FDIC is appointed receiver, or (2) the date the cause of action accrues. 12 U.S.C. § 1821(d)(14)(B).

#### C. Limitations

Under state law, a sale of real property under a power of sale in a mortgage or deed of trust that creates a real-property lien must be made not later than four years after the day the cause of action accrues. Tex. Civ. Prac. & Rem.Code § 16.035(b); *McLemore v. Pacific Southwest Bank*, 872 S.W.2d 286, 292 (Tex. App.—Texarkana 1994, writ dism'd by agr.). When this four-year period expires, the real-property lien and the power of sale to enforce the lien become void. Tex. Civ. Prac. & Rem.Code § 16.035(d). This four-year limitations period can be suspended by filing a written agreement in the county clerk's office where the real

property is located. Tex. Civ. Prac. & Rem. Code § 16.036.

Federal law provides a different limitations period for FDIC foreclosure actions. FIRREA provides that when the FDIC brings a contract action as a conservator or receiver, the statute of limitations is the longer of (1) the 6 year period beginning on the date the claim accrues, or (2) the statute of limitations under state law. 12 U.S.C. § 1821(d)(14)(A)(i). While FIRREA's express terms only grant this six-year limitations period to the FDIC, we have held that the FDIC's successors in interest are entitled to the benefit of this longer period when the claim had already accrued before the FDIC received the note. *Jackson v. Thweatt*, 883 S.W.2d 171, 174 (Tex.1994).

### III. ANALYSIS

The court of appeals did not reach the limitations issue because it concluded that the Church had not conclusively established the date Wolf's claim accrued. Accordingly, we consider that question first.

#### A. Accrual

■ Under its terms, the Church's note would mature in June 2007, the month the last installment was due. *See* Tex. Civ. Prac. & Rem.Code § 16.035(e). The Church claims, and Wolf agreed, that MITC's August 15, 1994, letter accelerated this maturity date. The parties also agreed that, upon this acceleration, any cause of action for unpaid amounts accrued, thereby triggering limitations under both state and federal law.

■ The court of appeals correctly noted that when a cause of action accrues is a question of law, not fact. *See Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990). It then concluded that the parties' agreement about the acceleration and accrual date was an impermissible at-

tempt to stipulate to a legal question. The court explained that it was incumbent upon the Church to prove the actual accrual date rather than rely on the parties' agreement. Because it determined that the Church had not carried this burden, the court of appeals reversed the trial court's summary judgment for the Church and remanded the case for further proceedings. —— S.W.3d at ——, 1999 WL 33256589.

The Church argues that the court of appeals violated Rule 166a(c) by reversing summary judgment on grounds other than those presented in the trial court. *See* TEX.R. CIV. P. 166a(c); *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993). The Church also argues that the court of appeals erred in holding that it did not present summary-judgment evidence conclusively establishing that the note was accelerated on August 15, 1994, and that limitations began running on that date.

Wolf responds by arguing that the trial court's recognition during the summary-judgment hearing that "everybody seems to agree" on the accrual date establishes that the issue was before the trial court and thus the court of appeals could review it. He also contends that the court of appeals correctly held that the Church did not establish the accrual date, and that, in fact, the record shows that MITC's attempted August 1994 acceleration was ineffective or abandoned.

■ We disagree with the court of appeals' analysis and hold that the parties' agreement about the acceleration date and the summary-judgment evidence each provide independent bases for the trial court to find the Church had conclusively established an accrual date. While accrual is a legal question, whether a holder has accelerated a note is a fact question to which parties may, and in this case did, agree.

*See, e.g., McLemore,* 872 S.W.2d at 291 (treating whether "note was accelerated, and when" as fact question); *Texas Airfinance Corp. v. Lesikar,* 777 S.W.2d 559, 563 (Tex.App.—Houston [14th Dist.] 1989, no writ) (treating whether promissory note had been accelerated as fact question).

■ "Assertions of fact, not plead in the alternative, in the live pleadings of a party are regarded as formal judicial admissions." *Houston First Am. Sav. v. Musick,* 650 S.W.2d 764, 767 (Tex.1983). A judicial admission that is clear and unequivocal has conclusive effect and bars the admitting party from later disputing the admitted fact. *Gevinson v. Manhattan Constr. Co.,* 449 S.W.2d 458, 467 (Tex. 1969). Here, Wolf's summary-judgment response and counter-motion for summary judgment states: "Defendant accepts Plaintiff's argument that the note was accelerated by the [sic] MITC on August 15, 1994, and that the statute of limitations began to run on that date." And at the summary-judgment hearing and in his court of appeals' brief Wolf consistently agreed that MITC accelerated the Church's note on August 15, 1994. Wolf's agreement amounted to a judicial admission of the acceleration date. Once Wolf's judicial admission established the acceleration date, the trial court could apply the law to conclude as a matter of law that accrual occurred upon this acceleration and that limitations then began running.

■ And, even without Wolf's admission, the summary-judgment evidence conclusively establishes an August 15, 1994, accrual. The Church's summary-judgment evidence included: (1) a copy of the deed of trust containing optional acceleration and power of sale clauses in favor of the original mortgagee and its successors and assigns; (2) documents tracing the note's ownership from Wynnewood bank to each

successor, including MITC and Wolf; and (3) a July 15, 1994, notice of intent to accelerate and an August 15, 1994, notice of acceleration signed by MITC's attorneys.

The court of appeals held that this evidence was not enough to establish effective acceleration, or, in the alternative, that MITC had abandoned acceleration:

> MITC was required to serve the Church with written notice of the sale, post written notice at the courthouse door for twenty-one days, and file a copy of the notice with the county clerk. There is no evidence in the record that MITC posted the property for sale or filed the notice with the county clerk. There is nothing in the record stating that MITC actually conducted a foreclosure sale. Accordingly, based on the record before us, it appears that, although the Church was in default and MITC served the Church with notice of a sale, MITC did not comply with the contractual or statutory conditions necessary to exercise its option to accelerate the note as declared. Apparently, MITC abandoned the note acceleration.

—— S.W.3d at ——, 1999 WL 33256589 (citations omitted). We disagree.

### 1. ACCELERATION

In holding that MITC's acceleration was ineffective, the court of appeals concluded that an optional acceleration clause cannot be exercised without actually taking steps towards foreclosing on the property. It relied on section 51.002 of the Texas Property Code and *Swoboda v. Wilshire Credit Corp.*, 975 S.W.2d 770 (Tex.App.—Corpus Christi 1998, pet. denied).

Section 51.002 establishes the procedures for conducting a foreclosure sale. The court of appeals held that MITC could not have accelerated the Church's note without following section 51.002's posting and notice procedures. In other words, the court held that the cause of action on the Church's note could not have accrued absent compliance with section 51.002. However, section 51.002 has nothing to do with accrual or limitations; it only governs the procedures noteholders must follow *if* they choose to exercise their power of sale. Rather, section 16.035 of the Texas Civil Practice and Remedies Code governs accrual, and it provides that a cause of action accrues and limitations begins to run from an installment note's maturity date.

*Swoboda* holds that:

> Exercise of the right of acceleration requires the mortgagee to make a clear, positive, and unequivocal declaration in some manner of the exercise thereof, *followed by* affirmative action towards enforcing the declared intention.... [A] declaration alone does not amount to an election to accelerate without accompanying enforcement action, *i.e.*, steps to execute foreclosure on the real property.

975 S.W.2d at 776 (citations omitted). Several other cases have likewise required affirmative steps towards foreclosure to accelerate a note secured by real property. *E.g., Shepler v. Kubena*, 563 S.W.2d 382, 385 (Tex.Civ.App.—Austin 1978, no writ) ("Intention to mature the note may be evidence[d] by declarations, which alone do not amount to an election, unless followed by affirmative action toward enforcing the declared intention."); *National Debenture Corp. v. Smith*, 132 S.W.2d 429, 431 (Tex. Civ.App.—Galveston 1939, writ dism'd judgm't cor.) ("[D]eclaration alone does not amount to an election to accelerate the maturity; ... to be effective as such, it must be followed by affirmative action toward enforcing the declared intention."); *cf. Joy Corp. v. Nob Hill N. Props., Ltd.*, 543 S.W.2d 691, 694–95 (Tex.Civ.App.—Tyler 1976, no writ) (holding acceleration may be accomplished by *either* declaring

entire debt due *or* taking some other unequivocal action indicating debt is accelerated).

We disapprove of *Swoboda* and this line of cases to the extent they can be read to require affirmative action towards foreclosure to trigger acceleration of a note secured by real property when the parties' agreement does not require such action. To hold, as the court of appeals did here, that acceleration does not occur and thus an action does not accrue until a foreclosure posting or sale takes place would, in essence, mean the foreclosure posting or sale would be the triggering event bringing about the right to hold a foreclosure sale. This result is nonsensical.

### 2. ABANDONMENT

The court of appeals alternatively held that MITC abandoned its attempted acceleration. However, as the court of appeals noted, it "is undisputed that the Church did not pay the balance or any portion thereof, or resume making regular payments or in any way change its position." —— S.W.3d at ——, 1999 WL 33256589. And Wolf has not argued that MITC or its successors had otherwise expressed an intent to abandon acceleration. Thus, abandonment is not implicated in this case.

Both MITC's notice of intent to accelerate and its notice of acceleration were "clear and unequivocal." *See Shumway*, 801 S.W.2d at 893. Because there is no evidence of abandonment, these notices established MITC's acceleration. Accordingly, we conclude that the Church presented conclusive evidence that MITC accelerated the Church's note on August 15, 1994. The trial court correctly held that any cause of action on the note accrued on that date and that limitations then began to run. Thus, the court of appeals erred

in holding that a fact issue existed about when MITC's action accrued.

### B. LIMITATIONS

■ Wolf foreclosed on the Church's property on October 6, 1998. Because Wolf's action accrued August 15, 1994, we must decide whether the state four-year or federal six-year statute of limitations governs his right to foreclose.

Wolf urges us to hold that, as a FDIC successor, he is entitled to FIRREA's six-year limitations period. *See Jackson*, 883 S.W.2d at 178 (applying six-year FIRREA limitations period to FDIC successor in interest where cause of action accrued before FDIC received the note). He recognizes that two federal courts have refused to extend FIRREA's limitations to FDIC successors when the notes were not in default until after the notes left the FDIC's hands. *See Beckley Capital Ltd. P'ship v. DiGeronimo*, 184 F.3d 52, 58 (1st Cir.1999) ("[T]he assignee does not get this benefit where an obligation is transferred by the FDIC before it is in default."); *Cadle Co. v. 1007 Joint Venture*, 82 F.3d 102, 105 (5th Cir.1996) ("We agree with Joint Venture that an assignee of the FDIC can invoke FIRREA's six-year period of limitations only if the note at issue was in default either before the FDIC acquired it or while the FDIC owned it."). However, he argues that because the Church's note *was* in default while in the FDIC's hands, he should receive the benefit of the six-year limitations period.

Conversely, the Church argues that the state four-year limitations period applies in this case. It contends that the relevant question is not whether the note was in default while the FDIC held it, but whether a cause of action had accrued before the FDIC transferred the note to a subsequent holder, thereby triggering limitations. It reasons that applying FIRREA's

limitations period when a cause of action does not accrue until *after* the FDIC transfers the note does nothing to further FIRREA's policies.

## 1. FIRREA

FIRREA's relevant section provides:

(14) Statute of limitations for actions brought by conservator or receiver.

(A) In general

Notwithstanding any provision of any contract, the applicable statute of limitations with regard to any action brought by the Corporation as conservator or receiver shall be—

(i) In the case of any contract claim, the longer of—

(I) the 6–year period beginning on the date the claim accrues; or

(II) the period applicable under State law;

....

(B) Determination of the date on which a claim accrues

For purposes of subparagraph (A), the date on which the statute of limitations begins to run on any claim described in such subparagraph shall be the later of—

(i) the date of the appointment of the Corporation as conservator or receiver; or

(ii) the date on which the cause of action accrues.

12 U.S.C. § 1821(d)(14). FIRREA does not expressly extend the benefit of this expanded limitations period to the FDIC's successors in interest. However, most jurisdictions have recognized, based on different theories, that the FDIC's successors do enjoy the benefit of the six-year period in some circumstances. *See, e.g., UMLIC–Nine Corp. v. Lipan Springs Dev. Corp.,* 168 F.3d 1173, 1177 n. 3 (10th Cir.1999);

*United States v. Thornburg,* 82 F.3d 886, 891–92 (9th Cir.1996); *FDIC v. Bledsoe,* 989 F.2d 805, 810 (5th Cir.1993); *Tivoli Ventures, Inc. v. Bumann,* 870 P.2d 1244, 1246 (Colo.1994); *Cadle Co. II, Inc. v. Lewis,* 254 Kan. 158, 864 P.2d 718, 724 (1993); *N.S.Q. Assocs. v. Beychok,* 659 So.2d 729, 734 (La.1995); *Investment Co. of the Southwest v. Reese,* 117 N.M. 655, 875 P.2d 1086, 1095 (1994); *Union Recovery Ltd. P'ship v. Horton,* 252 Va. 418, 477 S.E.2d 521, 524 (1996). And we so held in *Jackson v. Thweatt,* the case upon which Wolf relies. 883 S.W.2d at 178.

 The question we did not answer in *Jackson,* however, is the one presented here—whether the FDIC's successors enjoy the benefit of the six-year limitations period when a cause of action on the note has not accrued before the FDIC assigns the note to a subsequent holder. We agree with the Church that the policy justifications we cited for extending limitations in *Jackson* do not apply here. Thus, we join the two federal courts that have considered this issue and hold that the FDIC's successors do not receive the benefit of the FDIC's six-year limitations period if the cause of action does not accrue until after the note leaves the FDIC's hands.

## 2. JACKSON V. THWEATT

In *Jackson,* we considered two conflicting court of appeals opinions about whether FIRREA's six-year limitations period applies to the FDIC's successors in interest. 883 S.W.2d at 172–74. In both cases the noteholders' claims had accrued before the FDIC became the receiver of the noteholders. *Jackson,* 883 S.W.2d at 172–74. We recognized that 18 U.S.C. § 1821(d)(14) expressly confers the six-year limitations only on actions the FDIC brings. *Jackson,* 883 S.W.2d at 174. However, based on the common law maxim

that "[a]n assignee stands in the shoes of his assignor," we held that the FDIC's successors also have the benefit of the FDIC's longer limitations period. *Jackson*, 883 S.W.2d at 174. Any other holding, we explained, would diminish the note's market value in the hands of the FDIC, thereby hindering the purpose behind the longer limitations period:

> To hold that assignees are relegated to the state statute of limitations would serve only to shrink the private market for the assets of failed banks. It would require the FDIC to hold onto and prosecute all notes for which the state statute of limitations has expired because such obligations would be worthless to anyone else. This runs contrary to the policy of allowing the FDIC to rid the federal system of failed bank assets. The FDIC can only make full use of the market in discharging its statutory responsibilities if the market purchasers have the same rights to pursue actions against recalcitrant debtors as does the FDIC.

*Jackson*, 883 S.W.2d at 174 (quoting *Fall v. Keasler*, 1991 WL 340182, at *4 (N.D.Cal. Dec. 18, 1991)).

While we have never considered whether the result we reached in *Jackson* would compel extending FIRREA's limitations if the cause of action accrued after the note left the FDIC's hands, two federal circuit courts have declined to extend limitations in such a situation. *See DiGeronimo*, 184 F.3d at 58; *Cadle Co.*, 82 F.3d at 105.

### 3. CADLE COMPANY V. 1007 JOINT VENTURE

In *Cadle Company*, the Fifth Circuit first considered whether FIRREA's six-year limitations period enured to the benefit of a FDIC successor when the note was not in default until *after* the FDIC transferred it. 82 F.3d at 104–05. It held "that an assignee of the FDIC can invoke FIRREA's six-year period of limitations only if

the note at issue was in default either before the FDIC acquired it or while the FDIC owned it." *Cadle Co.*, 82 F.3d at 105. While the court spoke in terms of "default" rather than "accrual," its analysis treated the concepts as synonymous:

> FIRREA's six-year period of limitations has no significance independent of a claim to which it applies; it attaches only to an accrued claim, not to a performing note.... The six-year period is not triggered by the FDIC's appointment as receiver; rather, it becomes relevant only upon the accrual of a cause of action, at which time it identifies the starting date for the six-year period. Until there is a default, there is no claim....

*Cadle Co.*, 82 F.3d at 105. The court recognized the policies behind extending the six-year period to transferees, but noted that this "reasoning loses force with a note performing when the FDIC transfers it; because such a note is not in default, it has value to a prospective transferee and no limitation period is running." *Cadle Co.*, 82 F.3d at 106. Thus, it distinguished these facts from its previous cases holding that the six-year period applies to the FDIC's successors in interest. *See, e.g., Bledsoe*, 989 F.2d at 810–11.

### 4. BECKLEY CAPITAL LIMITED PARTNERSHIP V. DIGERONIMO

In *DiGeronimo*, the First Circuit considered whether FIRREA's six-year limitations period applied to expand a state statute of limitations requiring that suit be brought against an estate within one year after a decedent's death. 184 F.3d at 55. DiGeronimo guaranteed a note that was in default while the FDIC held it. *DiGeronimo*, 184 F.3d at 54. The FDIC later sold the note to Beckley Capital and DiGeronimo died a month later. *DiGeronimo*, 184 F.3d at 58. Because the note was already in default when the FDIC transferred the note, DiGeronimo was already subject to

suit as guarantor while the FDIC held the note. Despite this, the court refused to extend the statute of limitations:

> [T]he one-year New Hampshire statute [for bringing suit against an estate] had not begun to run at the time of the transfer because Beckley acquired the note and the guaranty in June 1994 and DiGeronimo did not die until July 1994. Accordingly, Beckley had the same one-year period to sue as any other person (apart from the FDIC) who happened to have a claim against a New Hampshire decedent. And because Beckley acquired the guaranty before this period even began to run, its position is closely analogous to the assignee in *Cadle* that acquired its note prior to the default. Put differently, there is no reason why a special statute of limitations is needed in this case to make the obligation marketable to a purchaser, and absent such a reason, the policy behind state statutes of limitation—vivid in this case—ought to be respected.

*DiGeronimo*, 184 F.3d at 58. The court expressly "adopt[ed] the principle in *Cadle* that the assignee does not get this benefit where an obligation is transferred by the FDIC *before* it is in default." *DiGeronimo*, 184 F.3d at 58 (emphasis added). And, as the *Cadle* court had done, the First Circuit discussed default and accrual as synonymous concepts.

## 5. ANALYSIS

In response to the huge number of bank failures in 1987 and 1988, FIRREA was enacted to "strengthen the enforcement power of [f]ederal regulators of depository institutions." Boteler, *Comment: Protecting the American Taxpayers: Assigning the FDIC's Six Year Statute of Limitations to Third Party Purchasers*, 24 TEX. TECH L.REV. 1169, 1169–71 (1993). The six-year limitations period was created because "once the FDIC is appointed receiver, it needs extra time to review all of the assets and liabilities it has just acquired, before it can go forward with any litigation by which to recover on defaulted promissory notes." Boteler, *supra* at 1078.

Two justifications are generally cited to support extending FIRREA's six-year period to FDIC's successors in interest even though FIRREA is silent about assignees. First, absent such an exception, the FDIC would be forced to prosecute all notes where state limitations has already run. *See, e.g., Bosque Asset Corp. v. Greenberg*, 19 S.W.3d 514, 521 (Tex.App.—Eastland 2000, pet. denied) ("[T]he federal policy of insuring a market for the assets of failed depositories militates strongly in favor of extending the federal statute of limitations to all subsequent assignees of the FDIC."); *see also Tivoli Ventures, Inc.*, 870 P.2d at 1250 ("Requiring the FDIC to prosecute each outstanding loan would ... unduly delay the transfer and sale of the insolvent bank's assets."). Interpreting FIRREA to require the FDIC to prosecute all notes where the state statute of limitations had run would be contrary to the policies behind FIRREA's enactment. *See generally Jackson*, 883 S.W.2d at 174.

The second justification cited for extending FIRREA's limitations period to its successors is the premise that "[a]n assignee stands in the shoes of his assignor." *General Fin. Servs., Inc. v. Practice Place, Inc.*, 897 S.W.2d 516, 520 (Tex.App.—Fort Worth 1995, no writ). This maxim supports the notion that the FDIC's right to an extended limitations period is part of the bundle of rights that transfers to its subsequent assignees. *See, e.g., Bledsoe*, 989 F.2d at 810. *But see WAMCO, III, Ltd. v. First Piedmont Mortgage Corp.*, 856 F.Supp. 1076, 1087–88 (E.D.Va.1994) (holding common law assignment theories do not support extending FIRREA limitations to assignees). We cited both justifications for our holding in *Jackson*. 883 S.W.2d at 174.

However, while these policies justify extending the six-year limitations period when a cause of action has accrued before the FDIC transfers the note, we agree with the First Circuit that "[n]o reason exists to extend this special benefit beyond the point where it serves the federal policy; and it does not do so here." *DiGeronimo,* 184 F.3d at 57. When a cause of action has not accrued before the FDIC transfers the note, a transferee has the same four years under section 16.035(b) of the Texas Civil Practice and Remedies Code to sue as any other person. Accordingly, refusal to extend limitations in this situation does not significantly impact the FDIC's notes' marketability.

 Moreover, even though an assignee generally "stands in the shoes of his assignor," *Bledsoe,* 989 F.2d at 810, the Fifth Circuit aptly explained why that concept would not apply here, where a claim has not accrued and thus the FDIC's right to a six-year limitations period is never triggered. "FIRREA's six-year period of limitations has no significance independent of a claim to which it applies; it attaches only to an accrued claim, not to a performing note." *Cadle Co.,* 82 F.3d at 105. We agree. Absent application of FIRREA's statute of limitations, a noteholder's right to sue is limited by section 16.035(b). The six-year provision does not "attach" to the bundle of rights passed to subsequent assignees unless FIRREA's express terms actually trigger the right.

Wolf recognizes that the *Cadle* and *DiGeronimo* courts refused to extend FIRREA's limitations when the notes were not in default until after the FDIC transferred the notes. However, he argues that their reasoning cannot apply here because it is undisputed that the Church's note *was* in default in the FDIC's hands. We disagree. While *Cadle* and *Beckley* do use the term "default" as the triggering event for determining whether FIRREA's limitations period is extended, it is clear from their reasoning that these courts rely on the default date only to the extent that *it was synonymous* with the accrual date in those cases. However, under Texas law we look to the accrual date as the event to determine if limitations had been triggered while the FDIC held the note. Because the evidence reflects that accrual occurred after the FDIC transferred the note, we hold that Texas' four-year statute of limitations applies to bar Wolf's foreclosure. *See* TEX. CIV. PRAC. & REM.CODE § 16.035(b).

## IV. CONCLUSION

The parties here agreed about the date the note was accelerated and the summary judgment evidence conclusively established the note's acceleration date. The court of appeals erred in holding that an optional acceleration clause cannot be effectively exercised without specific affirmative steps towards foreclosure. Rather, absent evidence of abandonment or a contrary agreement between the parties, a clear and unequivocal notice of intent to accelerate and a notice of acceleration is enough to conclusively establish acceleration. Therefore, the trial court correctly concluded that the Church's evidence conclusively established the date its note was accelerated and thus the date Wolf's cause of action accrued. And, because we further conclude that the cause of action accrued after the FDIC had assigned the note, we also hold that the Texas four-year statute of limitation applicable to foreclosure actions governs this case. Accordingly, we reverse the court of appeals' judgment and render judgment for the Church.

Justice HANKINSON did not participate in this decision.