

In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-18-00317-CV
_____

ANDRES VELIZ, SR. AND AMELIA V. VELIZ, APPELLANTS

V.

WELLS FARGO BANK, N.A., AS TRUSTEE ON BEHALF OF LAKE COUNTRY
MORTGAGE LOAN TRUST 2005-HE1, APPELLEE

On Appeal from the 181st District Court
Randall County, Texas
Trial Court No. 68,281-B; Honorable John B. Board, Presiding

April 13, 2020

MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.[1]

This is an appeal of a final *Order Granting Defendant's Motion for Final Summary Judgment,* permitting Appellee, Wells Fargo Bank, N.A., Trustee on behalf of Lake Country Mortgage Loan Trust 2005 HE1 ("Wells Fargo"), to proceed with the non-judicial

_____
[1] Chief Justice Brian Quinn, not participating.

foreclosure of a deed of trust lien encumbering the homestead of Appellants, Andres Veliz, Sr. and Amelia V. Veliz ("Veliz") and rendering a take-nothing judgment as to the claims filed by Veliz against Wells Fargo. Through three issues, Veliz contends the trial court erred in (1) granting summary judgment, (2) granting summary judgment on the basis of waiver or abandonment of acceleration, and (3) granting summary judgment on the basis of filing a counterclaim pursuant to section 16.069 of the Texas Civil Practice and Remedies Code. We affirm the decision of the trial court.

### BACKGROUND

In August 2000, Veliz executed a home equity promissory note in the original principal sum of $60,000, bearing interest at the rate of 11.440 percent per annum, payable to Conseco Finance Servicing Corporation. The promissory note was secured by a home equity lien and deed of trust covering the real property situated at 5201 Valverde Avenue, Amarillo, Texas, recorded at page 00619830 of the Official Public Records of Randall County, Texas. Under the terms of the promissory note and deed of trust, Veliz was required to timely pay a monthly mortgage payment of principal and interest totaling $698.63 per month, on the 4th day of each month, commencing October 4, 2000, as well as any applicable escrow fees and charges due under the terms of the promissory note and deed of trust. In addition, the promissory note called for a balloon payment of all unpaid principal and interest on September 4, 2015. Wells Fargo is the current owner and holder of that promissory obligation and security interest.[2]

---

[2] Unless otherwise specifically noted, references herein to "Wells Fargo" includes Wells Fargo's predecessor in interest as to both the promissory obligation and security interest.

In 2008, a dispute arose between Veliz and Wells Fargo when Veliz failed to make the full monthly mortgage payment as required by the terms of the promissory note and deed of trust. Because the promissory note and deed of trust allowed the owner and holder of the note to accelerate the sums due in the event of default, Wells Fargo gave Veliz notice of its intent to accelerate the promissory obligation unless satisfactory arrangements were made. When arrangements were not made, Veliz was served with a *Notice of Acceleration* on December 9, 2008. On December 10, 2008, Wells Fargo filed an application for an expedited order allowing foreclosure of a home equity loan in Cause Number 60,640-A, in the 47th District Court, in and for Randall County, Texas. At that time, Veliz continued to occupy the premises and he resumed making some partial payments on the promissory note. In response, Wells Fargo ceased prosecution of its foreclosure claim, and on March 10, 2009, the trial court signed an order granting a voluntary dismissal with respect to that proceeding.

Later in 2009, a new dispute arose when Veliz again failed to make the full monthly mortgage payment as required by the terms of the promissory note and deed of trust. Again, Wells Fargo gave Veliz notice of its intent to accelerate the promissory obligation unless satisfactory arrangements were made. When arrangements were not made, Veliz was served with a second *Notice of Acceleration* on September 10, 2009. Six days later, on September 16, 2009, a second application for an expedited order allowing foreclosure of a home equity loan was filed in Cause Number 61,601-C, in the 251st District Court, in and for Randall County, Texas. Again, Veliz continued to occupy the premises and, again, Wells Fargo ceased to prosecute its foreclosure claim. An order allowing

3

foreclosure was never entered and, three years and six months later, the second lawsuit was dismissed for want of prosecution on March 20, 2013.

In 2014, the dispute again ripened and on December 22, 2014, Wells Fargo filed its third lawsuit seeking an expedited order allowing foreclosure of the deed of trust in Cause Number 67,941-A, in the 47th District Court, in and for Randall County, Texas. On or about March 23, 2015, a visiting judge entered an order in that cause allowing Wells Fargo to proceed with foreclosure pursuant to the provisions of Rule 736 of the Texas Rules of Civil Procedure. As a result of that order, Wells Fargo posted the property for foreclosure; however, for reasons not stated in the record, Wells Fargo did not proceed to foreclose its lien at that time.

On April 2, 2015, Veliz filed this suit, the subject of this appeal and the fourth lawsuit pertaining to this particular loan and deed of trust, in Cause Number 68,281-B, in the 181st District Court, in and for Randall County, Texas. Pursuant to the provisions of Rule 736.11 of the Texas Rules of Civil Procedure, the filing of the suit resulted in an *automatic stay* of the pending foreclosure proceeding. *See* TEX. R. CIV. P. 736.11. In the pleadings, Veliz alleged the promissory obligation secured by the deed of trust was barred by the four-year statute of limitations provided by section 16.035 of the Texas Civil Practice and Remedies Code, based on the September 2009 notice of acceleration. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.035 (West 2002). Veliz also sought a declaratory judgment voiding Wells Fargo's deed of trust lien.

On May 1, 2015, Wells Fargo filed its counterclaim seeking relief from the automatic stay and permission to proceed with its foreclosure. Two years and five months

4

later, on October 16, 2017, Wells Fargo, as defendant and counterclaimant, filed a traditional motion for summary judgment. On November 17, 2017, the trial court sent counsel a letter indicating that "Defendant's Motion for Summary Judgment is denied." The parties continued to negotiate, and the case lingered on until the trial court once again issued notice of its intent to dismiss this case for want of prosecution.

On May 29, 2018, Wells Fargo filed its *Verified Motion to Retain,* requesting the trial court to set the case for mediation and, in the alternative, for trial in the event the mediation was not successful. That same day, Veliz filed *Plaintiff's Unopposed Verified Motion to Retain,* seeking the same relief. Rather than send the matter to mediation or retain it on the docket of the trial court, on May 30, 2018, the trial court entered its order granting Wells Fargo's motion for summary judgment (the same motion previously denied in November 2017), thereby denying Veliz's defense regarding the statute of limitations, and permitting Wells Fargo to proceed with its foreclosure of the property in question. Thereafter, Veliz filed a motion for new trial and a timely notice of appeal. On appeal, Veliz maintains the trial court erred in granting Wells Fargo's motion for summary judgment.

### STANDARD OF REVIEW

In reviewing a summary judgment, an appellate court must apply the standards established in *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548-49 (Tex. 1985). In that regard, we review a trial court's decision to grant summary judgment according to a *de novo* standard of review. *Cantey Hanger*, *LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015). In our review, we consider as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the

nonmovant's favor. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). A trial court properly grants a traditional motion for summary judgment when the movant has established that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003).

If the movant initially establishes a right to summary judgment on the issues expressed in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would raise a fact issue or otherwise preclude summary judgment. *Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678-79 (Tex. 1979). When, as here, the trial court does not specify the grounds for its summary judgment, the appellate court must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. Co.*, 128 S.W.3d at 216; *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000); *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993).

Furthermore, when, as here, the nonmovant (Veliz) opposes the granting of summary judgment based on an affirmative defense (limitations), the movant (Wells Fargo) is not entitled to summary judgment unless there is no issue of material fact as to the movant's claim and it has conclusively negated an essential element of the nonmovant's affirmative defense, thereby establishing the movant's right to summary judgment as a matter of law.

Rule 736 of the Texas Rules of Civil Procedure provides the procedure for obtaining a court order, when required, to allow foreclosure of a lien containing a power of sale in a security instrument (such as the deed of trust in this case) securing a home equity loan or home equity line of credit under article XVI, sections 50(a)(6), (k), and (t) of the Texas Constitution. *See* TEX. R. CIV. P. 735.1. With respect to a home equity loan, an application for an expedited order allowing foreclosure (1) must be filed in the county where all or part of the real property encumbered by the lien sought to be foreclosed is located or in a probate court with jurisdiction over proceedings involving the property; (2) may not be filed until the "opportunity to cure" has expired; (3) must identify by name and last known address each person legally authorized to prosecute the foreclosure, as well as each person obligated to pay the loan agreement and each mortgagor of the loan agreement, contract, or lien sought to be foreclosed; (4) identify the property encumbered by the loan agreement, contract, or lien sought to be foreclosed by common street address and legal description; (5) describe the lien sought to be foreclosed and its constitutional or statutory reference; (6) describe the authority of the party seeking foreclosure; (7) describe each person obligated to pay the loan agreement, contract, or lien sought to be foreclosed; (8) describe mortgagor, if any, of the loan agreement, contract, or lien sought to be foreclosed who is not a maker or assumer of the underlying debt; (9) as of a date that is not more than sixty days prior to the date the application is filed (a) describe the number of unpaid scheduled payments, if the default is monetary, (b) describe the amount required to cure the default, if the default is monetary, (c) the facts creating the default, if the default is non-monetary, and (d) the total amount required

to pay off the loan agreement, contract, or lien, if applicable; (10) state that the requisite notice or notices to cure the default has or have been mailed to each person required under applicable law and the loan agreement, contract, or lien sought to be foreclosed; (11) state that the opportunity to cure has expired; (12) state that before the application was filed, any other action required under applicable law and the loan agreement, contract, or lien sought to be foreclosed was performed; (13) must conspicuously state (a) that legal action is not being sought against the occupant of the property unless the occupant is also named as a person obligated to pay the loan or a mortgagor of the loan agreement and (b) that if the party seeking the expedited order obtains a court order, that party will proceed with a foreclosure of the property in accordance with applicable law and the terms of the loan agreement or lien sought to be foreclosed; (14) must include an affidavit of material facts in accordance with Rule 166a(f) signed by the party or servicer describing the basis for foreclosure; and (15) attach a legible copy of (a) the note, original recorded lien, or instrument establishing the lien, and current assignment of the lien, if any, and (b) each notice required to be mailed to any person under applicable law and the loan agreement, contract, or lien sought to be filed before the application was filed and proof of mailing of each notice.  *See* TEX. R. CIV. P. 736.1.

### ANALYSIS

Here, Veliz's sole contention is that Wells Fargo is not entitled to proceed with its foreclosure because the debt secured by the deed of trust is barred by the four-year statute of limitations applicable to liens on real property found in section 16.035 of the Texas Civil Practice and Remedies Code.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.035 (West 2002).  As such, Veliz is effectively contending that there is a question of

8

fact concerning the unpaid balance of the promissory obligation and, therefore, the amount required to cure the default. In response, Wells Fargo contends the undisputed facts establish that it "abandoned" the 2009 acceleration and the debt claim secured by the deed of trust did not accrue until September 4, 2015, when the balloon payment came due. Alternatively, Wells Fargo contends that, even if the debt secured by the deed of trust did accrue on September 10, 2009, it was "revived" pursuant to the provisions of section 16.069 of the Texas Civil Practice and Remedies Code. *See id.* at § 16.069 (West 2015).

Section 16.035 of the Texas Civil Practice and Remedies Code provides that a person must bring suit for the recovery of real property under a real property lien or the foreclosure of a real property lien not later than four years after the day the cause of action accrues. *See id.* at § 16.035(a) (West 2004). Furthermore, a sale of real property under a power of sale in a mortgage or deed of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues. *Id.* at § 16.035(b). Upon expiration of the four-year limitations period, the real property lien and the power of sale to enforce that lien become void. *Id.* at § 16.035(d).

Where, however, the secured debt is payable in installments, the four-year limitations period does not begin to run until the maturity date of the last installment. *Id.* at § 16.035(e). Accordingly, if an installment promissory obligation secured by real property contains an optional acceleration clause, default in the monthly installment obligation does not *ipso facto* start limitations to run on the note. *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 566 (Tex. 2011). Rather, the action accrues when the holder of the note actually exercises its option to accelerate. *Id.* (citations omitted).

9

However, even when a noteholder has accelerated a note on default, the holder can abandon that acceleration if the holder continues to accept payments without exacting any remedies available to it upon maturity. *Id.* In such circumstances, the action of the parties can "have the effect of obviating the default and restoring the contract to its original condition as if it had not been broken." *Id.* (quoting *Denbina v. City of Hurst*, 516 S.W.2d 460, 463 (Tex. Civ. App.—Tyler 1974, no writ)). Where an option to accelerate has been withdrawn or revoked, it effectively restores the note's original provisions. *Id.*

When a cause of action accrues is a question of law, not fact. *Holy Cross Church of God in Christ,* 44 S.W.3d at 567 (citing *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990)). While accrual is a legal question, whether a holder has accelerated a promissory obligation payable in installments is a fact question, to which the parties can either contest or agree. *Id.* at 568 (citations omitted). Similarly, in a situation where an installment promissory obligation has purportedly been accelerated, whether the holder of that obligation has waived or revoked that acceleration is, likewise, a fact question.

Notwithstanding the provisions of sections 16.035 and 16.069 of the Texas Civil Practice and Remedies Code provide that if a counterclaim or cross-claim arises out of the same transaction or occurrence that is the basis of the original action, a party may file the counterclaim or cross-claim *even though as a separate action it would be barred by limitations* on the date the party's answer is required. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.069. The purpose of section 16.069 is to prevent a claimant from postponing the filing of an action until an adversary's valid claim is barred by limitations. *See Oliver v. Oliver,* 869 S.W.2d 271, 273 (Tex. 1994). Here, the original claims being prosecuted were Veliz's request for an automatic stay of Wells Fargo's foreclosure proceeding and a

10

declaratory judgment seeking to establish that Wells Fargo's monetary claim was barred by limitations. Clearly, Wells Fargo's counterclaim seeking leave of court to proceed with a non-judicial foreclosure was a matter arising out of the same transaction and surrounding facts as Veliz's claim. As such, it could be said that Veliz's claim came within the purpose and scope of section 16.069. Disallowing Wells Fargo's counterclaim would effectively reward Veliz for repeatedly delaying and postponing the threatened foreclosure proceeding. Accordingly, we find, as a matter of law, that Wells Fargo's claim for relief was not barred by limitations. Because Wells Fargo has negated an essential element of Veliz's affirmative defense, and because Wells Fargo's right to foreclose was established as a matter of law, the trial court did not err in granting summary judgment. Issues one and three are overruled.

Because the judgment of the trial court did not specify the grounds on which it was granted and because the judgment is sustainable on the above-referenced theory, we need not address whether the judgment is also sustainable on the theory of abandonment or revocation of the prior acceleration of maturity. Accordingly, issue two is pretermitted. *See* TEX. R. APP. P. 47.1.

**CONCLUSION**

The judgment of the trial court is affirmed.

Patrick A. Pirtle
Justice

11