**AFFIRMED and Opinion Filed June 29, 2021**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-21-00235-CV

## IN THE INTEREST OF A.M.R., A CHILD

**On Appeal from the 468th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 468-56100-2016**

## MEMORANDUM OPINION
Before Justices Molberg, Goldstein, and Smith
Opinion by Justice Smith

This appeal originates from Father's petition to adjudicate paternity and Mother's suit to terminate his parental rights to A.M.R. The trial court adjudicated Father's paternity. A jury denied Mother's request to terminate Father's parental rights and appointed Father sole managing conservator and Mother possessory conservator.

On appeal, Mother argues the trial court abused its discretion by (1) admitting the results of a paternity test into evidence, (2) adjudicating Father as A.M.R.'s father, and (3) failing to include a family violence jury question and definition. She further contends the evidence is legally insufficient to support adjudication of Father's paternity. We affirm the trial court's final SAPCR order.

# Background

On November 8, 2016, six days after A.M.R.'s birth, Father filed a petition to adjudicate parentage. Mother filed a general denial. On November 14, 2016, the court signed an agreed order for genetic testing pursuant to family code section 160.502. The results indicated Father was the probable father by 99.9999 percent.

On March 10, 2017, approximately four months after receiving the genetic test results, Mother filed a counter-petition to adjudicate parentage and suit affecting the parent-child relationship alleging the "purpose of this suit is to establish the parent-child relationship between [Father] and the child." She listed Father's relationship to A.M.R. as "Father." Although she stated A.M.R. had a presumed father, Mother did not identify the presumed father.

On March 17, 2017, the trial court held a hearing regarding the temporary orders where certain agreements between the parties were made and read into the record. On July 17, 2017, the court signed temporary orders stating, in part, that "[t]he Court finds that [FATHER] is adjudicated to be the Father of the subject child, [A.M.R.], pursuant to conclusive and positive genetic testing results which show him to be the father of the subject child." Thus, the court "ORDERED that [FATHER] is, and he is adjudicated to be, the father of [A.M.R.]."

On April 24, 2019, Mother filed a motion to enforce the temporary orders and requested, among other things, Father pay past-due child support and out-of-pocket

expenses for A.M.R.'s health insurance, which Father failed to provide as required by the temporary orders.

On April 25, 2019, Mother filed an application to terminate Father's parental rights "without waiving any objection to the results of any paternity testing." She alleged, in part, that Father raped her, which resulted in her pregnancy with and birth of A.M.R. Mother further alleged Father committed family violence in the form of assault and sexual assault in late 2015 and early 2016. Father filed an answer in which, among other things, he denied A.M.R. was conceived by rape and denied engaging in family violence.

On October 16, 2019, Mother filed a motion to bifurcate the jury trial. She argued the trial should be bifurcated between the parental termination and all other SAPCR issues including support, access, and conservatorship because the "parental termination is dispositive" and could eliminate the need for the SAPCR trial.

The trial could held a hearing on December 5, 2019. It appears from the record that some discussion regarding paternity occurred off the record before the hearing started. Father's counsel stated, "I didn't know paternity was an issue," to which the court responded, "I was not made aware either until we were approached earlier." From the outset, the trial court expressed concern about Mother's delay in objecting to and challenging paternity, particularly when all parties agreed to the genetic testing in 2016 and the DNA results had been on file for over two years.

–3–

Mother's counsel refused to concede the paternity issue was waived. She argued that because there was no final order adjudicating paternity, she could still challenge the results of the genetic test because she believed there was a chain of custody issue and the statutory requirements of family code section 160.504(b) had not been met.

The court, however, referenced the prior proceedings where the DNA test was agreed to. The Court further noted the DNA test reflected Father's paternity, which was subsequently agreed to and included in temporary orders. The court further noted that neither party had previously objected to the DNA test results or the temporary orders but proceeded with the hearing. The court admitted the report and the temporary orders over Mother's chain of custody objection. At the conclusion of the hearing, the court made a final ruling adjudicating Father as A.M.R.'s father.

The case proceeded to trial. A jury subsequently denied Mother's request to terminate Father's parental rights, and Father was appointed sole managing conservator with Mother appointed possessory conservator. Mother filed her notice of appeal challenging the court's April 9, 2020 final order adjudicating parentage and SAPCR.

## A.M.R.'s Paternity

In her first issue, Mother argues the trial court abused its discretion by admitting the report from the DNA testing into evidence. Father argues the trial court did not abuse its discretion because Mother stipulated to paternity, her

pleadings judicially admitted paternity, Father's testimony corroborated his paternity, and other evidence authenticated the report.

We begin by considering the state of the record. Mother did not file a complete record on appeal. Generally, when a party files an appeal with only a partial reporter's record, the court of appeals must presume the omitted portions of the record are relevant and support the trial court's judgment. *See Interest of R.G.A.C.L.G.*, No. 05-19-00846-CV, 2020 WL 4281953, at *3 (Tex. App.—Dallas July 27, 2020, no pet.) (mem. op.); *see also Mason v. Our Lady Star of the Sea Catholic Church*, 154 S.W.3d 816, 819 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

The clerk's record contains the temporary orders, filed on July 7, 2017, in which the trial court found and adjudicated Father as A.M.R.'s father "pursuant to conclusive and positive genetic testing results which show him to be the father." The temporary orders begin by stating, "On March 17, 2017, the Court approved the agreements of the parties read into the Court's record." Both parties appeared in person and through their attorneys and announced they had reached an agreement. The docket sheet indicates that the trial court held a hearing at 9 a.m. on March 17, 2017, and "[a]greement announced and recited into the record. Agreement approved and adopted as orders of the court."

The appellate record does not include a transcript of the March 17 hearing in which the temporary orders were read into the record and approved by the parties.

–5–

Thus, we must presume that portion of the record supports the trial court's decision to adjudicate parentage, meaning Mother did not challenge the adjudication of Father's paternity. *See, e.g.*, *In re A.W.P.*, 200 S.W.3d 242, 245–46 (Tex. App.—Dallas 2006, no pet.).

In reaching this conclusion, we are mindful that the trial court held a brief hearing regarding paternity, for which we do have a transcript. At the beginning of the paternity hearing, the following exchange occurred:

> THE COURT: I wanted clarification as to whether or not you were contesting paternity as you said you are. That's the first we've heard of it today when you approached the bench, and started questioning the jury.
>
> I guess my question is, now after reviewing the temporary orders, I understand your argument that it was temporary orders in which the adjudication occurred. My concern I have is the DNA test was already on file and had been on file, and it wasn't objected to prior to agreeing to the orders. These weren't orders that were just entered by the court. These were orders agreed to by all the parties.
>
> I guess my concern at this point, do you have some sort of case law that says that adjudication would not be appropriate since the parties all agreed to it and did not object to the lab at that point in time?
>
> [MOTHER'S ATTORNEY]: No. . . .
>
> . . .
>
> THE COURT: Okay. So it's your belief that despite the agreement, despite the lab being on file, and despite no objection being made to it that you still have an objection and that was not considered an adjudication on paternity at this point.
>
> [MOTHER'S ATTORNEY]: That's our position, Your Honor.

Father responded, among other things, that the agreed temporary order adjudicated paternity despite the court not entering a separate, final order. Mother's counsel refused to concede that she waived the issue.

Although we praise the trial court for proceeding with a paternity hearing "out of an abundance of caution,"[1] we conclude that under the facts of this case, such caution was unnecessary. Here, both parties relied on the temporary orders for two years, and Mother repeatedly judicially admitted Father's paternity. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 905 (Tex. 2000) ("A judicial admission is a clear, deliberate, and unequivocal assertion of fact that is conclusively established in live pleadings, making the introduction of other pleadings or evidence unnecessary."); *see also Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 568 (Tex. 2001) ("Assertions of fact, not plead in the alternative, in the live pleadings of a party are regarded as formal judicial admissions.").

The very nature of a SAPCR involves "the parent child relationship," which the family code defines as "the legal relationship between a child and the child's parent" including "the father and child relationship." *See* TEX. FAM. CODE ANN. § 101.025. Mother indicated Father was A.M.R.'s father in her counter-petition to

---

[1] In findings of fact filed on an unrelated issue, the trial court indicated that it proceeded with the hearing "out of an abundance of caution" despite "an agreed order for paternity testing on December 16, 2016, paternity results on file in this case since January 10, 2017, and temporary orders entered where Father was adjudicated."

–7–

adjudicate parentage and SAPCR filed after the results of the genetic test. She listed Father as a party "affected by this suit" and "Relationship: Father." She indicated the purpose of the suit was to "establish a parent-child relationship," and she sought, among other things, child support from Father.

To the extent Mother relies on her statement in her counter-petition that A.M.R. has a presumed father, we are unpersuaded by her argument. Her pleading did not identify the presumed father, and she provided no indication the "presumed father" qualified as a presumed father as defined by the family code or that she intended the reference in the statutorily-defined sense rather than in some colloquial sense. *See, e.g.*, *Martin v. Sanders*, No. 01-18-00726, 2019 WL 2750598, at *5 (Tex. App.—Houston [1st Dist.] July 2, 2019, no pet.) (mem. op.) (presumed father status not judicial admission despite mother referring to him twice as presumed father in petition when petition provided no context indicating he met statutory definition).

Mother also filed a motion to enforce the temporary orders and though we acknowledge she never referred to Father as "father" but instead as "respondent," she sought back child support, indicating she believed he was the man responsible for supporting A.M.R. Mother further indicated her belief he was the father when she filed a motion to terminate his parental rights.

Because Mother filed numerous documents reciting Father is A.M.R.'s father, these assertions of fact in her live pleadings are judicial admissions. *See, e.g.*, *In Interest of N.F.M.*, No. 05-15-01232-CV, 2016 WL 6835721, at *4 (Tex. App.—

Dallas Nov. 3, 2016, no pet.) (mem. op.) (concluding mother judicially admitted paternity by reciting that father was child's father and pleading that he was obligated to pay child support in counter-petition); *see also Blessing v. Cardenas*, No. 03-07-00436-CV, 2008 WL 3539943, at *1 (Tex. App.—Austin Aug. 15, 2008, no pet.) (mem. op.) ("Blessing had previously acknowledged in her pleadings that Cardenas 'is the father of the subject child' and also signed a mediated settlement agreement regarding temporary orders acknowledging this fact. These statements amount to judicial admissions."). Mother continued to rely on the adjudication of Father's paternity, which was based on the genetic testing, for over two years before she objected to the genetic testing based on family code section 160.504(b). In fact, she waited until the jury was impaneled for the SAPCR trial to raise the issue. Based on the judicial admissions in this case and the delay in raising her complaint, we conclude Mother's objection was untimely. As such, Mother has waived her first issue on appeal. *See* TEX. R. APP. P. 33.1. Having reached this conclusion, we need not address whether the trial court abused its discretion by admitting the report from the DNA testing into evidence. *See* TEX. R. APP. P. 47.1.

In her second and third issues, Mother argues the trial court abused its discretion by adjudicating Father's paternity based on the genetic report, and the evidence is legally insufficient to support the adjudication. Mother concedes that these two issues are intertwined and dependent, in part, on our resolution of her first issue.

A trial court's decision in a paternity action or action establishing the parent-child relationship is reviewed for an abuse of discretion and will only be disturbed when it is clear the court acted in an arbitrary and unreasonable manner. *In Interest of J.E.P.*, No. 05-17-00095-CV, 2018 WL 3968418, at \*3 (Tex. App.—Dallas Aug. 20, 2018, pet. denied). In family law cases, the traditional sufficiency standards of review overlap with the abuse-of-discretion standard of review; therefore, legal and factual insufficiency are not independent grounds of error but are relevant factors in our assessment of whether the trial court abused its discretion. *In Interest of P.S.*, 505 S.W.3d 106, 109–10 (Tex. App.—Fort Worth 2016, no pet.). To determine whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the trial court's decision, we must determine (1) whether the trial court had sufficient evidence upon which to exercise its discretion and (2) whether the trial court erred in its application of that discretion. *Id*. at 110.

Although R.R. testified he was A.M.R.'s father, was present at her birth, and took care of both A.M.R. and Mother, R.R. did not testify that he was married to Mother when A.M.R. was born or that they cohabitated together during the probable time of conception. *See* TEX. FAM. CODE ANN. § 160.204(a) (describing when man is presumed father of child). Instead, the record contains temporary orders in which the trial court adjudicated paternity (approved by the parties and read into the record), a genetic test indicating Father's paternity by 99.9999 probability, and Father's testimony he is A.M.R.'s father. Thus, the evidence is legally sufficient to

support Father's paternity, and the trial court had sufficient evidence to exercise its discretion to adjudicate Father's paternity. We overrule Mother's second and third issues.

**Charge Error**

In her final issue, Mother argues the trial court abused its discretion by failing to include a family violence question and definition in the jury charge. She contends she was entitled to the question because the issue was raised by the evidence, and the family code requires consideration of family violence when deciding conservatorship. Father responds that Mother failed to comply with the appellate rules for filing a partial record; therefore, her issue is waived. Alternatively, Father contends Mother's SAPCR pleading did not plead family violence, and she failed to properly preserve her issue for review because she did not comply with civil procedure rule 274. *See* TEX. R. CIV. P. 274 (discussing procedure for objecting and requesting jury charge questions and definitions to preserve complaint).

Similar to Mother's first issue, we must begin by determining the scope of our record review. Generally, when a party files an appeal with only a partial reporter's record, the court of appeals must presume the omitted portions of the record are relevant and support the trial court's judgment. *See Interest of R.G.A.C.L.G.*, 2020 WL 4281953, at \*3; *see also Mason*, 154 S.W.3d at 819.

To justify reversal of the trial court's decision regarding alleged jury charge error, Mother must establish the error probably caused the rendition of an improper

judgment. *See* TEX. R. APP. P. 44.1. To determine whether an alleged error in the charge is reversible, we must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. *Mason*, 154 S.W.3d at 819 (citing *Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex. 1986)).

Mother only provided a partial record containing her testimony and that of her best friend regarding Father's alleged violent acts. The record does not include opening statements, Father's testimony, any other witness testimony, or closing arguments. The record indicates there were several charge conferences, but Mother provided only one volume of the reporter's record from the charge conferences.

In short, to evaluate Mother's issue, we must review the entire trial record. However, the partial record forecloses our ability to do so because we cannot consider "the record as a whole" and the "evidence presented," as we must, to determine whether any error occurred that probably caused the rendition of an improper judgment. *See, e.g.*, *Umeh v. Rivas*, No. 05-15-00784-CV, 2016 WL 3442378, at *1 (Tex. App.—Dallas June 22, 2016, no pet.) (mem. op.) (presuming missing portion of record supports trial court's decision when incomplete record filed); *Hiroms v. Scheffey*, 76 S.W.3d 486, 489 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (holding that failure to provide entire record precluded review of whether court gave improper jury instruction); *see also Andrews v. Sullivan*, 76 S.W.3d 702, 705 (Tex. App.—Corpus Christi-Edinburg 2002, no pet.) (unable to

determine whether charge error existed without entire record to review).

Accordingly, we overrule Mother's fourth issue.

## Conclusion

Having overruled Mother's issues, we affirm the trial court's judgment.

/Craig Smith/
CRAIG SMITH
JUSTICE

210235F.P05



## Court of Appeals
## Fifth District of Texas at Dallas
### JUDGMENT

IN THE INTEREST OF A.M.R., A
CHILD


No. 05-21-00235-CV

On Appeal from the 468th Judicial
District Court, Collin County, Texas
Trial Court Cause No. 468-56100-
2016.
Opinion delivered by Justice Smith.
Justices Molberg and Goldstein
participating.


In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee Alejandro Arce Ortiz recover his costs of this appeal from appellant Melody Hsueh-ling Rivas.


Judgment entered this 29th day of June 2021.